MARSHALL, J.
The facts and proceedings in this case are sufficiently set out in the opinion in case No. 8314, wherein these respondents were the plaintiffs in error and these appellants were the defendants in error. The defendants (appellants here) contend that notwithstanding Jedediah E. McKenzie may have been insane when he executed the deed of trust to Stewart on the first of April, 1875, still Stewart acted in good faith and was guilty of no fraud upon Jedediah, and therefore the plaintiffs can not be allowed to recover the land without refunding the benefits received by Jedediah from that contract, and without restoring the status quo of the parties, which they claim requires not only that the Donnells shall be reimbursed what they paid for the land at the sale under the Stewart deed of trust, and what they have since paid for taxes, repairs and legal expenses in protecting and preserving the property, with interest on these sums, less the value of rents and profits, but also that the Mason deed of trust for $15,000, now held by the bank, shall be also paid before the plaintiffs shall be allowed to recover. They contend that under the doctrine of Blount v. Spratt, 113 Mo. 48, Wells v. Mutual Benefit Ass’n, 126 Mo. l. c. 637, and Rhoades v. Fuller, 139 Mo. 179, this is the true equity principle applicable to the case, if plaintiff can be allowed to redeem at all, but they also assert that the Donnells are innocent purchasers, under the Stewart deed of trust, for value and without notice of McKenzie’s infirmity, and hence they are entitled to retain their bargain.
It has been fully pointed out in the opinion iñ case No. 8314, wherein these appellants were defendants in error, that the contract of an insane person, not in ward, is voidable only, and will only be avoided, in any case, upon the insane person or his representatives restoring the benefits-received by him *472 from, the contract, that is, upon condition that the status quo of the parties be restored, but that it. will not be avoided at all if this can not be done or if in avoiding it injustice would be done to the other party. The application of these principles of law to the facts presented by this record determines this case.
Stewart’s connection with this transaction was fair, manly and beyond adverse criticism. He knew Jedediah had been adjudged insane in 1869, and had also been adjudged sane in 1870. The deed of trust to secure Stewart for indorsing Jed.ediah’s note was made in 1875. It was not hastily done. It was made a matter of consideration and discussion in the McKenzie family and with their friends for quite a while before it was done. Stewart derived no benefit from it. McKenzie got the money from the bank (as to which no knowledge of McKenzie’s condition is shown), and he invested it in business, which was carried on for four months, when, upon information of his partner, McKenzie was again adjudged insane. Stewart had to pay the note ($3,000) to the bank. The sale was not made under the deed of trust until February 20, 1877. The Donnells purchased the property at that sale for $2,105, and held it, paying taxes and carrying charges, until July 26, 1886, when they borrowed $15,000 on the ■ property from Mason, and secured it by a deed of trust, which is now held by the Citizens National Bank, both of whom acted in good faith and without notice of McKenzie’s condition. There is a vast volume of testimony preserved in the record in this case as to McKenzie’s mental capacity to contract when he made the Stewart deed of trust. It is not necessary to consider any of the questions arising upon the trial or the rulings of the court upon them, as appellants do not urge them here now. We are concerned only with two questions, 1st, are the plaintiffs, under the facts here shown, entitled to redeem at all; and, 2d, if the plaintiffs can redeem, upon what terms should it be allowed in a court of equity.
*473 Conceding that the Donnells are innocent purchasers for value and without notice, it does not follow that McKenzie must lose his property. Complete .equity can be done by putting them in the same position as if they had never purchased the property. By repaying them the purchase price they paid, with the taxes, cost of protecting it, and interest on their outlay, and charging them with rents and profits, they will be in as good condition as if they had never purchased. They will not profit by their bargain, it is true, but a court of equity does not respect bargains acquired at the expense of insane persons, who can not adequately protect- themselves. By following the method of adjustment of equities just pointed out, and requiring, the plaintiffs to refund the amounts so paid out by defendants (the Donnells) the status quo of the parties is restored — the plaintiffs will have returned the bénefits Jedediah has received from the transaction, and the defendants (the Donnells) will be repaid all the expense they have incurred and plaintiffs will be entitled to recover the land. There is thus no difficulty in doing equity between the plaintiffs and the Donnells. But it is insisted that Mason and the bank are innocent parties, who acted without any knowledge of McKenzie’s condition, and that the $15,000 loaned by the bank must be refunded by the plaintiffs before the status quo is restored. Mason and the bank may be regarded as innocent persons, but what benefits did McKenzie receive from them which his heirs ought to refund in order to avoid the contract ? The error in appellant’s contention lies right here. McKenzie got no benefit from them. The Donnells got the fifteen thousand dollars. It was no benefit to McKenzie or to the land. It does not even appear that any part of it was spent in improving the land. Presumably the Donnells spent it or have it still. The land was used as security from the Donnells to Mason for the loan, but if Donnell’s title to the land failed, Mason would lose his security. If this happened, Mason could not attribute *474 bis loss to McKenzie, for be bad nothing to do with the matter, and received no benefit from the transaction which a court of equity could require him to refund in order to get back his land. Unless it be the law then that where the grantee of land acquired from an insane person sells the land to an innocent third person for value and without notice, the insane person can not recover it at all and the title is perfect in the third person, these plaintiffs are entitled to recover this land on the terms contained in the decree of the circuit court (as modified by the court in case No. 8314 as to the $375).
Without reviewing the multitude of cases which .the industry and research of the able counsel have collected in this case, we conclude that the right to avoid, upon equitable terms, a deed made by an insane person, can not be defeated by a conveyance of the land to an innocent third person for value and without notice, nor can additional terms to the right to redeem, be added by the grantee encumbering the property. To deny the right to avoid the deed because the property had passed into the hands of an innocent purchaser for value and without notice, would in effect deny the right to avoid at all, and would nullify the beneficent protection which courts of equity throw around those'who are so afflicted that they can not protect themselves.
It would be an easy matter for a grantee of an insane man to sell the property, pocket the proceeds and look with indifference upon subsequent litigation, if by so doing he could convey a perfect title to any third person. It would be a queer law that, pretending to be a shield to the helpless, should thus put a sword in the hands of a p.erson sui juris to help him wrest property from a person non compos mentis, by such simple means. Adequate justice and complete equity is done when the insane man is required to restore the benefits he has received from the transaction, and there is neither right, law nor morality which/would require him to restore *475 benefits which some one else has received from the land, but not from the insane man’s contract.
The fact that Mason loaned the money upon the faith of the land, and that the proper records showed the title to be in the Donnells and gave no notice of McKenzie’s condition when he wrote the Stewart deed of trust under which Donnell acquired title, in short, the fact that Mason was an innocent party and parted with his money without notice as to McKenzie’s condition, is wholly immaterial. The doctrine that where one of two innocent persons must suffer the loss must fall on him who made the condition possible, has no application to cases of this character, for an insane person can not be held responsible for consequences which he-could not understand or prevent. Where an insane person is entitled to avoid a conveyance as between himself and his immediate grantee, he is also entitled to avoid it as between himself and any grantee or mortgagee holding under his grantee, and the terms to be imposed are the benefits that flowed from the grantee to the insane man, and not such benefits as the insane man’s grantee received from any other person to whom he granted or mortgaged the land. [Rogers v. Blackwell, 49 Mich. 192 ; Hull v. Louth, 109 Ind. 315 ; Hovey v. Hobson, 53 Mo. 451 ; Chew v. Bank, 14 Md. 318 ; German Savings & Loan Society v. DeLashmutt, 67 Fed. Rep. 399 ; Dewey v. Allgire, 37 Neb. 6.] As was said in Hovey v. Hobson, 53 Mo. 451, the bona fide grantee of the grantee of an insane person must rely on the covenants of his deed for restitution, and it is not necessary that he should be placed in status quo by a plaintiff in a suit to vacate the conveyance. The record showed that Donnell had title, but it did not prove that he had right of title as against the claims of an insane man who had no legal capacity to convey a right to the title.
The decree of the circuit court proceeded upon correct legal principles and required restitution of all the plaintiffs could properly be required to restore as a condition precedent *476 to their right to recover the land, and modified by striking out the $375 referred to in the opinion in case No. 8314, it does complete justice and equity between the parties, and is therefore hereby affirmed.
All' concur.
Extension oe Time to Redeem. — The foregoing judgment is hereby modified so as to direct the circuit court to enter a judgment extending the time stated in its original judgment within which the plaintiffs were granted the privilege to redeem, so as to grant the right so to redeem within ninety days after August 1st, 1899, and so as to strike out the $375 above indicated. In all other respects the judgment of the circuit court is affirmed.