Marcia LaROSE et al.,
Plaintiffs-Appellants,

v.

Bennie CASEY et al.,
Defendants-Respondents.

No. KCD 29007.

Missouri Court of Appeals,
Kansas City District.

July 31, 1978.

Motion for Rehearing and/or Transfer
Denied Aug. 28, 1978.

Application to Transfer Denied
Oct. 10, 1978.

Fred L. Slough, Kansas City, for plaintiffs-appellants.

Russell D. Jacobson, Thomas B. Sullivan, III, William R. Williams, Vold, Sullivan, Finnegan, Gordon & Williams, Manfred Maier, Kansas City, for defendants-respondents.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ROBERT R. WELBORN, Special Judge.

Action for damages, compensatory and exemplary, in nine counts in behalf of four plaintiffs against five defendants, individually and as officers of the Police Department of the City of Kansas City. Judgment in trial court on jury verdict was unfavorable to plaintiffs on all counts. They have appealed.

On January 20, 1972, Marcia LaRose and her five children, ages seven to sixteen, resided at 3258 Gillham Road in Kansas City, Missouri. At around 11:15 P.M., 16-year-old James Carrillo, one of Marcia's children, while either on the front porch of the house or near the house, depending upon whose version of the incident was correct, directed an obscenity toward either a passing police car or toward an officer who sought to question James. According to Marcia and James, James was upset because the police had towed away his automobile. They went to the front porch to discuss the matter out of the hearing of the rest of the family. A police car passed by and James shouted the obscenity. According to Marcia, she ordered James into the house and some five or ten minutes later, a police car stopped in front of the house, with the ensuing confrontation described below.

According to Officer Oliver, one of the defendants, he had investigated a prowler call and sought to question James about his identity and where he was going because his clothing matched to some extent that of the prowler. As he got out of the car, James yelled the obscenity at him and Oliver responded "You're going to jail" or "You're under arrest." James then ran into the house.

Oliver used his police radio to call Officer Moss, another defendant, and request assistance in making an arrest. The call was heard by other patrolling officers and eventually some 10 police vehicles and 15 or 20 officers appeared at the Gillham Road address.

Officer Kasselman, also a defendant, was the first officer to arrive to assist Oliver. The two officers went to the front door of the residence. Mrs. LaRose was inside, behind the closed glass door. She asked the officers what they wanted and they told her that they wanted a person who had run into the house. They asked her to open the door. She inquired whether they had a warrant and the officers replied negatively.

Two of the other children, Mark and Larry, were near the door and the officers pointed at Mark and said they wanted him. Mrs. LaRose refused to open the door. The officers pushed and banged on the door as other officers appeared.

After a period of time during which Mrs. LaRose telephoned neighbors for assistance, Mrs. LaRose returned to the front door where officers remained and she was aware that some officers had gone to the rear door. Officers at the front door broke the glass in the door and entered. At approximately the same time, Mrs. LaRose heard breaking at the rear door and other officers entered the house through that door.

According to plaintiffs, the officers entered the house and without provocation proceeded to beat the three unarmed boys. The officers had a different version.

According to Officer Oliver, he and Kasselman and later Moss were at the front door, talking to Mrs. LaRose who was behind the closed door and explaining what they wanted. She refused to open the door because the officers had no warrant. Oliver could see the three boys inside the house. Two of them had armed themselves with knives and one with a ketchup bottle. They were shouting to the officers such remarks as "Come on into our house, pig, we'll get you." Oliver, Moss and Officer Liss went to the rear of the house to see if they could get in there. They tried the door and it was locked. The three boys, still armed, came to the rear of the house and shouted at the officers there.

Officers Kasselman and Casey remained at the front door. Kasselman heard one of the boys say "They are coming in the rear" and the three armed boys ran to the rear of the house, out of Kasselman's sight. Kasselman was concerned that the officers might enter through the rear and encounter the boys, not knowing they were armed. He, therefore, broke the glass in the front door and he and Casey entered the house.

At nearly the same time the officers in the rear broke in that door and entered the house. As Kasselman and Casey entered, one of the boys lunged at Casey with a knife. Casey drew his revolver and backed the boy into a corner. The boy again lunged at Casey with the knife and Casey struck him with his revolver. A second boy hit Kasselman in the mouth. Kasselman knocked the boy against a wall and other officers subdued him. Moss pursued James, caught him and fought to hold him as James tried to get away.

The officers eventually subdued the three boys and took them outside, placed them under arrest, took them to police headquarters where they were "booked" on various charges. They were turned over to juvenile authorities and eventually released without formal charges.

Mrs. LaRose was also arrested and charged with disorderly conduct and interfering with a police officer in the performance of his official duties. At a trial in Municipal Court she was found guilty on both charges. On appeal to the Circuit Court, the disorderly conduct charge was dismissed but she was found guilty of interfering with a police officer. Upon appeal to this court, her conviction was reversed but the case was transferred to the Supreme Court. In *Kansas City v. LaRose,* 524 S.W.2d 112 (Mo. banc 1975), the judgment of conviction was affirmed.

The present cause of action was in nine counts against Officers Casey, Kasselman, Liss, Moss and Oliver, individually and as officers of the Kansas City Police Department. The claims stated were:

Count I—Marcia LaRose asked $105 actual and $10,000 punitive damages for trespass of all defendants into her home and their search of the premises.

Count II—Mrs. LaRose asked $508.50 actual and $10,000 punitive damages for assault and battery.

Count III—Larry Carrillo sought $500 actual and $10,000 punitive damages for assault and battery.

Count IV—A similar claim by Mark Carrillo.

Count V—A similar claim by James Carrillo.

Count VI—Mrs. LaRose asked $505.50 actual and $10,000 punitive damages for false arrest and imprisonment.

Counts VII through IX—Larry, Mark and James separately asked $500 actual and $10,000 punitive damages for false arrest and imprisonment.

Prior to trial, defendants' motion for summary judgment was sustained as to Count VI. Upon trial various defendants had motions for directed verdicts sustained as to various counts but all counts except VI were submitted to the jury which found in favor of defendants on all such counts. After their motion for new trial had been overruled, plaintiffs appealed.

Appellants' first assignment of error is based upon the trial court's sustaining the defendants' motion for summary judgment as to Count VI and limiting the submission by appellant LaRose on Count I. In both instances, the trial court's action was premised upon the conclusion that by virtue of the case of *Kansas City v. LaRose,* supra, the doctrine of collateral estoppel precluded relitigation by appellant LaRose of the issue of the right of the officers to enter the LaRose residence.

The history of *Kansas City v. LaRose* has previously been detailed. In affirming her conviction for violation of the Kansas City ordinance relating to interfering with police officers (Section 26.35, Revised Ordinances of Kansas City, Missouri), the court, in answering the contention by Mrs. LaRose that the officers had no right to enter her house without a warrant and that she, therefore, had the right to refuse to admit them, stated (524 S.W.2d 119[12]): "We rule that the officers had a right to enter defendant's home under the circumstances presented." In the present case, the trial court quoted this language in holding that Mrs. LaRose's claim of trespass could not be submitted on the basis of the officers forcefully entering her house and would have to be limited to a claim based upon a search of the entire house, as testified to by witnesses for plaintiffs. The trial court also relied upon *Kansas City v. LaRose* as the basis for sustaining defendants' motion for summary judg-

ment as to Count VI, Mrs. LaRose's claim for false arrest and imprisonment.

By their original brief, the trial court's ruling was attacked by appellants as an erroneous application of the doctrine of collateral estoppel because of the absence of identity of parties in the two actions. A reply brief on behalf of appellants has considerably expanded the scope of their attack upon the trial court's ruling to include, among other matters, an attack upon the Supreme Court's conclusion in *Kansas City v. LaRose,* supra, that the officers had probable cause for the arrest of James and had the right to enter the house without a warrant and the applicability of collateral estoppel in the case of a judgment based upon a charge of violating a municipal ordinance. Such an expansion by reply brief of the basis of error on the part of the trial court is not the proper function of a reply brief. However, these contentions will be considered, except insofar as appellants attempt to inject constitutional questions for the first time by reply. Clearly, constitutional questions must be raised at the earliest possible time in the proceedings and a reply brief is inappropriate for such purpose.

This court some time ago abandoned the requirement of identity of parties as an element of collateral estoppel where the estoppel is asserted against the party against whom the issue was decided in another case. In the case of *In re Estate of Laspy,* 409 S.W.2d 725 (Mo.App.1966), Judge Cross quoted approvingly the criteria set forth in *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892, 895 (1942), for determining the validity of a plea of res judicata (409 S.W.2d at 737): "Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

Appellants would limit the Laspy holding to cases in which the prior conviction for a criminal offense is employed against the

convicted person in an action in which he seeks to benefit from the crime which he committed. Whether or not a conviction in a criminal case might otherwise be used as a basis for collateral estoppel need not be pursued.

However, it is clear that this court has not limited Laspy to the narrow factual situation there involved. Thus, in *Matter of the Estate of Gould*, 547 S.W.2d 863, 869[1] (Mo.App.1977), the executor of an estate seeking compensation for his services was held precluded from relitigation of the issue of his misconduct in that position which had been established in earlier proceedings for his disbarment from the practice of law, based in part upon his misconduct as executor. The court described the case as a "classic case of collateral estoppel * * *." 547 S.W.2d 869[1]. Note is taken of *City of St. Joseph v. Johnson*, 539 S.W.2d 784 (Mo.App.1976), cited by appellants, in which this court considered the "disparity of parties" in refusing to permit a party in whose favor an issue had been decided to use such determination in another proceeding involving an entity not a party to the first action. However, the criteria approved in *Laspy* relate to the use of the prior judgment *against* the party attempting to relitigate the issue.

■ Appellants assert that the issues presented by Mrs. LaRose in her claims for trespass and false arrest are not identical with those presented in *Kansas City v. La-Rose*. In that case the court found that Mrs. LaRose had violated the Kansas City ordinance relating to hindering a police officer in the performance of his duties. The offense was obviously committed in the presence of the officer. Mrs. LaRose does not assert that her claim for false arrest is based on grounds other than that her arrest was without probable cause. Her conviction has established that the officers did act with probable cause and the trial court properly sustained the defendants' motion for summary judgment on this claim. See *Carter v. City of St. Petersburg*, 319 So.2d 602 (Fla.App.1975).

■ On the trespass issue, the Supreme Court clearly upheld the right of the officers to enter Mrs. LaRose's residence in the circumstances. In this court argument is advanced as to the correctness of that conclusion. However, this court is not the forum for correction of error on the part of the Supreme Court. The trial court correctly refused to resubmit the issue of the legality of the entrance by the officers. This court will not go into the constitutional ramifications of the arrest of James in view of the tardy assertion of a claim in this regard.

■ Mrs. LaRose asserts that the conviction of an ordinance violation should not be the basis for collateral estoppel because where the effect of a conviction is "likely to be a mere fine, the parties have not the incentive or the opportunity to fully litigate the issues." This argument might have some merit if the municipal court conviction were the basis of the collateral estoppel. However, Mrs. LaRose litigated her conviction not only at that level, but throughout each succeeding level of the judicial system of this state. The assertion that she did not have a fair opportunity to litigate the issues out of which the collateral estoppel arises is obviously without merit.

No error on the part of the trial court in giving conclusive effect to the holdings of *Kansas City v. LaRose*, supra, has been shown.

Instruction No. 4 was a third method converse instruction under MAI 33.05, authorizing a verdict for defendants if the jury believed that the search of the house was limited to looking for other minor children of Mrs. LaRose "and/or" lost keys, or to effect the arrest of plaintiffs.

At the trial, evidence was offered by witnesses for plaintiffs, other than plaintiffs, after the plaintiffs had been brought outside the house by the officers, seven or eight officers searched all rooms in the house, both upstairs and down, going through drawers. Officer Moss testified that he went back into the house from the street after learning from Mrs. LaRose that there might be other children still in the

house. He found two smaller children after a search in which he had the assistance of Officer Oliver. There was also testimony that officers were in the house looking for lost keys.

■ In this court, Instruction No. 4 is attacked on the grounds that it is not an MAI approved instruction, that it fails to follow the requirements for a third method MAI converse, that it is an improper modification of MAI No. 33.05 because it fails to converse an ultimate issue submitted in plaintiffs' verdict-directing instruction and that it is not supported by the evidence. The motion for new trial attacked Instruction No. 4 as erroneous because "it misstates the law on the Fourth Amendment and the circumstances allowing lawful entry and there was insufficient evidence to submit any defensive instruction." The complaints here voiced differ from those found in the motion for new trial. Review of objections to instructions is based upon the objections voiced in the trial court. Different and additional objections may not be raised for the first time in the appellate court. *Bower v. Hog Builders, Inc.*, 461 S.W.2d 784, 797–798[4][5] (Mo.1970); *Crystal Tire Co. v. Home Service Oil Co.*, 525 S.W.2d 317, 322[5] (Mo. banc 1975). In this court the instruction has been attacked for its lack of evidentiary support. The attack on the lack of evidentiary support for the instruction was stated in the motion for new trial as applicable to *any* defensive instruction. Appellants' brief here acknowledges that there was support for the submission that the re-entry search was limited to *looking for the younger children*. No argument is here advanced regarding the insufficiency of the instruction under the Fourth Amendment. The evidentiary support ground preserved for review is without merit. Other objections have not been preserved so no basis for a finding of error appears.

Instruction No. 8 was an instruction given at the request of Officer Kasselman as a defense to Mrs. LaRose's claim for assault and battery. That claim was submitted to the jury against only Officer Kasselman and was premised upon the acts of Kasselman in kicking in the glass of the front door, causing injury to Mrs. LaRose. Mrs. LaRose testified that the glass shattered and some struck and cut her. Instruction No. 8 told the jury that the verdict on this claim should be for defendant Kasselman if he used only the force necessary to make entry into the house. The assertion here is that the instruction is erroneous because it assumes that Kasselman had a right to make a forcible entry into the house, "which is not admitted by plaintiffs either as a matter of law or fact, and in fact is the most crucial and contested issue in the lawsuit." This contention ignores the holding by the Supreme Court in *Kansas City v. LaRose*, supra, that the officers did have the right to make a forcible entry. The decision in that case supplies the answer to the objection now stated.

Points IV and V in appellants' brief are as follows:

"IV. THE COURT ERRED IN GIVING DEFENDANTS' AFFIRMATIVE DEFENSE INSTRUCTIONS NO. 16, 24 and 32 TO PLAINTIFF LARRY, MARK AND JAMES CARRILLO'S VERDICT DIRECTING ASSAULT AND BATTERY INSTRUCTIONS NO. 15, 23, and 31, BECAUSE THEY ARE NOT APPROVED M.A.I. INSTRUCTIONS AND UNDER THE LAW ARE NOT DEFENSES TO THEIR CLAIMS FOR ASSAULT AND BATTERY IN THE FACTS OF THIS CASE, AND BECAUSE THE DEFENSES ARE NOT SUBMITTED IN THE DISJUNCTIVE AS REQUIRED BY LAW, AND BECAUSE THEY ARE NOT SUPPORTED BY THE EVIDENCE.

"V. THE COURT ERRED IN GIVING DEFENDANTS' AFFIRMATIVE DEFENSE INSTRUCTIONS NO. 12, 20 and 28 TO PLAINTIFF LARRY, MARK AND JAMES CARRILLO'S VERDICTING (sic) DIRECTING FALSE IMPRISONMENT INSTRUCTIONS NO. 11, 19 and 27, FOR THE REASONS THAT THEY ARE NOT APPROVED M.A.I. AFFIRMATIVE DEFENSE INSTRUCTIONS AND UNDER THE LAW ARE NOT A DEFENSE TO PLAINTIFFS' CLAIMS FOR FALSE IM-

PRISONMENT BECAUSE THE DEFENSES ARE NOT SUBMITTED IN THE DISJUNCTIVE AS REQUIRED BY LAW, AND ARE NOT SUPPORTED BY THE EVIDENCE."

The portions of plaintiffs' motion for new trial which attacked these instructions read as follows:

"20. Because the court erred in submitting Instructions #12 and #16 as they misstate the law and the evidence in that there was no evidence whatsoever that plaintiff Larry Carrillo was even outside the house, much less committing any crime or violating any ordinance and any acts committed inside the home, which are not hereby admitted, were in defense of home and family and in opposition to his own unlawful arrest.

"21. Because the court erred in submitting Instructions #20 and #24 as they misstate the law and the evidence in that there was no evidence whatsoever that Mark Carrillo was even outside the house, much less committing any crime or violating any ordinances, and any acts inside the home, which are not hereby admitted, were in defense of home and family and in opposition to his own unlawful arrest.

"22. The court erred in submitting Instructions #28 and #32 in that they misstate the law and the evidence in that there was no evidence that James Carrillo committed any crime or violated any ordinance.

"23. Because the court erred in submitting Instructions #4, #8, #12, #16, #20, #24, #28, #32, #35 and #37, in that these instructions were not MAI approved."

Comparison of the points here relied upon with the motion for new trial clearly shows that appellants have not briefed and argued here the objections to these instructions raised in their motion for new trial. The matters here urged, not having been presented to the trial court by the motion for new trial, have not been preserved for review.

As to each of these instructions as well as Instruction No. 4, above considered, appellants assert that the instruction is erroneous because of the failure to submit the various theories of defense disjunctively, as required by MAI No. 1.02. No such specific objection is to be found in the motion for new trial. The motion does attack the instructions as "not MAI approved." However, it offers no statement of wherein the instructions failed to meet MAI approval. Such a general assignment is insufficient to provide a basis for grant of a new trial and therefore preserves nothing for appellate review. *Laclede Inv. Corp. v. Kaiser,* 541 S.W.2d 330, 333[1, 2] (Mo.App.1976); *Stein v. McDonald,* 394 S.W.2d 297, 300[4, 5] (Mo. 1965).

Appellants, by their reply brief, request review of the claimed errors in instructions under the plain error rule. Rule 84.13(c). No "manifest injustice or miscarriage of justice" appears to have been caused by the errors asserted. This case was tried well on behalf of appellants. The issues presented to the jury, although numerous, involved basically contradictions in evidence which the jury resolved against appellants. No reason appears for application of the plain error rule.

Judgment affirmed.

All concur.