ESTATE OF Jess BROWN, Deceased,
Plaintiff-Respondent,

v.

Gary BROWN and Donna Jean Brown,
Defendants-Appellants.

No. 14543.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 5, 1987.

Jasper N. Edmundson, Hyde, Purcell, Wilhoit, Spain, Edmundson and Merrell, Poplar Bluff, for defendants-appellants.

Janet K. Brown, Greenville, for plaintiff-respondent.

MAUS, Judge.

The Estate of Jess Brown, deceased, by his personal representative, brought this action to recover real property and personal property conveyed by the decedent while he was allegedly mentally incapable of doing so. The trial court granted the relief sought. The grantees, Gary Brown and Donna Brown, his wife, appeal. They state only two points. This opinion does not directly or by implication decide any other possible issues.

Only a terse statement of the factual background is necessary. In August, 1982, the decedent was involved in a serious automobile accident. He was injured. His wife, who was a passenger, was killed. Approximately two weeks after the accident the decedent had major surgery to correct an aortic aneurysm.

In December of 1982 he suffered a seizure. He was hospitalized from December 17, 1982 to January 11, 1983. During that hospitalization it was observed that he suffered organic brain disease. After his seizure, his physical and mental condition rapidly deteriorated. A daughter, one of his nine children, stayed with and cared for the decedent from August, 1982, to March, 1983. After that time, a series of other relatives provided such care.

On April 1, 1983, the appellants commenced living with the decedent. Appellant Donna Brown was a granddaughter of the decedent. On April 15, 1983, the decedent, the appellants and the decedent's son, Tymon Brown, went to the office of an attorney. There the decedent signed a deed conveying his home, the real property in question, to the appellants, subject to a life estate. Appellant Donna Brown also asserted that at this time the defendant gave her his household furnishings. Those alleged conveyances are the subject matter of this action.

The decedent was again hospitalized on April 25, 1983. He died May 11, 1983, at the age of 83.

█ By one point the appellants contend the trial court erred in admitting an expert opinion the decedent lacked the capacity to convey the property in question. They cite *Rice v. Haltom*, 599 S.W.2d 248 (Mo.App. 1980) for the proposition that such testimony was not admissible because it was an opinion on the question directly in issue. In this connection both parties have conceded that under the factual circumstances the validity of the conveyances is to be determined by whether or not the decedent possessed testamentary capacity. See *Flynn v. Union National Bank of Springfield*, 378 S.W.2d 1 (Mo.App.1964). This court will consider that validity on that basis. For a definition of testamentary capacity see MAI 15.01 (1981).

A Missouri treatise contains the following statement.

> Missouri cases exclude both lay and expert witness opinions as to the mental capacity or incapacity of a person to

make a will. *Gillmore v. Atwell*, 283 S.W.2d 636, 639 (Mo.1955). This rule of exclusion applies whether the question is asked in terms of a conclusion as to mental capacity or incapacity or as to the several elements which make up competency to make a will, i.e., mental capacity to comprehend who the testator's children are, to understand the nature and extent of his property, and to note to whom he desires to give it.

Missouri Evidence Restated § 704 (Mo. Bar 1984). However, accepting that proposition does not determine the point. There is a distinction between an opinion concerning capacity as the term is used in the foregoing proposition and an opinion as to unsoundness of mind or incompetency. It is established that upon a proper foundation a lay person may testify that a testator is of unsound mind. *Ahmann v. Elmore*, 211 S.W.2d 480 (Mo.1948); *Vienhage v. Carter*, 680 S.W.2d 749 (Mo.App.1984). Certainly a medical doctor upon the basis of personal examination and observation may give such an opinion. *Pike v. Pike*, 609 S.W.2d 397 (Mo. banc 1980). In this case, the decedent's attending physician testified the decedent was not competent; he was not capable of handling his own affairs. "The mental capacity required by the law to make a gift and the capacity which distinguishes the competent from incompetent in a medical sense is not always the same." *Flynn v. Union National Bank of Springfield, supra*, at 6. The doctor's opinion related to the decedent's mental condition from a medical standpoint and such opinion was admissible. *Chichizola v. Salarano*, 440 S.W.2d 452 (Mo.1969).

█ The appellants' remaining point is that the trial court's determination of incapacity is not supported by the evidence. Under this point the appellants cite bits of testimony that tend to establish the decedent had testamentary capacity. They also argue that even if there was evidence of testamentary incapacity at times, there was no evidence of such incapacity at the time of the conveyances. In connection with

this argument they cite *Farr v. Lineberger,* 207 S.W.2d 455 (Mo.1948).

In making this point, the appellants do not consider the effect of the trial court's determination against them on the issue of testamentary incapacity. See Rule 73.01. The evidence tending to establish testamentary incapacity of the decedent included the following. During his hospitalization in December of 1982, the decedent was observed to have organic brain disease. His physician testified that following December of 1982 "in my opinion he was not capable of handling his own affairs." Between his release from the hospital in January, 1983, and the time of his death, his physical condition was very poor. He was confused. He asked who owned the house where he lived. He asked for his mother. He wanted his daughter to take him to see his brother who had been dead for 50 years. There were times he didn't know his children. He asked what happened to his wife who had been killed in the car accident. He asked where and how he acquired property that he did not own. He told one son that a friend had died or that the friend's wife had killed him and then killed herself. This was untrue. He would eat breakfast, take a nap for 20 minutes and then want to eat breakfast again. Upon his admission to the hospital on April 25, 1983, his diagnosis was vascular disease, organic brain syndrome, heart disease and pneumonia. Medical evidence established that organic brain disease was a progressive disease.

This court must accept as true the evidence favorable to the result reached and the reasonable inferences therefrom, and disregard the contradictory evidence. *Holtschneider v. Stratman,* 655 S.W.2d 47 (Mo.App.1983). It was not necessary to show by an eyewitness testamentary incapacity at the moment of the execution of the deed. Evidence of the decedent's mental condition before and after that execution is sufficient if it provides a reasonable inference of incapacity at the time of execution. *Thompson v. Curators of University of Missouri,* 488 S.W.2d 617 (Mo.1973).

The evidence viewed in accordance with the above mandate was sufficient to support the determination of the trial court. The judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.