ESTATE OF Jess BROWN, Deceased, Plaintiff–Appellant,

v.

BANK OF PIEDMONT and Cindy J. Wilson, Defendants–Respondents.

No. 15717.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 18, 1989.

---

Randy P. Schuller, Hackworth and Schuller, Piedmont, for plaintiff-appellant.

Robert M. Ramshur, Ramshur and Goforth, Piedmont, for defendants-respondents.

HOGAN, Judge.

In this action plaintiff Sharon Beardon, as Public Administrator of Wayne County, sought a declaration of the rights and interests of the parties in and to a parcel of real estate located in Wayne County, Missouri. The appeal is here on an agreed statement of fact in lieu of a transcript, as provided by Rule 81.13, V.A.M.R. and therefore the only question before us is whether the trial court drew the proper conclusion from the facts stipulated. *State ex rel. Ciba Pharmaceutical Products, Inc. v. State Tax Commission*, 382 S.W.2d 645, 651[1] (Mo.banc 1964); *Surface v. Ranger Insurance Company*, 526 S.W.2d 44, 45[1] (Mo.App.1975).

Plaintiff Sharon Beardon is, apparently, the administrator of the Estate of Jess Brown, deceased. The real property here involved has been mortgaged to the defendant Bank of Piedmont by a statutory deed of trust executed by Gary Brown and Donna Brown, his wife, as security for a loan. Defendant Cindy Wilson is trustee for the Bank of Piedmont.

The facts stipulated are:

"1. That Plaintiff is a decedent's estate pending in Wayne County Circuit Court, Probate Division.

2. That Defendant, Bank of Piedmont, is a Missouri Banking Corporation authorized to do business and doing business in the City of Piedmont, County of Wayne, State of Missouri, and that Defendant, Cindy J. Wilson, is a resident of Wayne County, Missouri.

3. That on the 15th day of April, 1983, Jess Brown conveyed to Gary Brown and Donna Brown, his wife ... certain real estate located in Wayne County, Missouri, to wit:
[Here a metes and bounds description of a small tract of realty is set out].

4. That on the 11th day of May, 1983, the said Jess Brown died.

5. That on the 30th day of August, 1983, the said Gary Brown and Donna Brown, his wife, secured a loan at Defendant, Bank of Piedmont, and secured the same with a deed of trust on the above described real estate (along with other lands).

6. That the proceeds of the loan above mentioned were not expended upon the property described in paragraph three (3) above.

7. That said deed of trust was duly recorded in the Wayne County Land Records in Book 307 at Page 23.

8. That subsequently, by Judgment dated October 22, 1985, the above described deed from Jess Brown to Gary Brown and Donna Brown, his wife, was set aside, with said Judgment being upheld by the Missouri Court of Appeals Opinion dated January 5, 1987. [The court's opinion is reported sub nom *Estate of Brown v. Brown*, 722 S.W.2d 345 (Mo.App.1987).]

9. That the said deed of trust of Defendant, Bank of Piedmont, is unsatisfied and still exists as a lien on said real estate in the Wayne County Land Records.

10. *That Defendants, Bank of Piedmont and Cindy J. Wilson, Trustee, were not parties to the prior action described in paragraph seven (7) above.*

11. That it is agreed that the matter can be submitted to the Court upon this Stipulation of Facts and the Briefs of the parties." (Emphasis supplied).

After hearing argument, the trial court entered judgment finding all issues tendered in favor of the defendants and against the plaintiff.

The defendants pleaded, in very general terms, that they were not and should not

be bound by the judgment in the action setting aside the deed from Jess Brown, deceased, to Gary and Donna Brown, because they were not parties to the prior action. Given fair intendment, the allegations of the defendants' answer are sufficient to invoke the familiar principle that in civil actions, application of the doctrine of res judicata is generally limited to a former judgment in an action between the same parties, or between those in privity with them. See *State v. Bradley*, 361 Mo. 267, 273, 234 S.W.2d 556, 558 (1950).

The concept of res judicata or former adjudication is in a state of evolution. Even the terminology of the doctrine is changing, and varies from case to case. We do not propose to discuss the doctrine of res judicata at length; we undertake only to apply the rules of former adjudication, as we understand them, to this case.[1] As a starting point, we quote from *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713, 719 (Mo.banc 1979):

"[8] Traditionally, res judicata (claim preclusion) precludes the same parties from relitigating the same cause of action whereas collateral estoppel (issue preclusion) precluded the same parties from relitigating issues which had been previously adjudicated....

▪ The concept of collateral estoppel has been extended, allowing strangers to the prior suit to assert collateral estoppel against parties to the prior suit to bar relitigation of issues previously adjudi-

cated. This extension of the concept of collateral estoppel removes the requirement of mutuality of estoppel which required that the party asserting the estoppel also be bound by the estoppel. See, *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass'n.*, 19 Cal.2d 807, 122 P.2d 892 (1942); *Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *LaRose v. Casey*, 570 S.W.2d 746, 749–750 (Mo.App.1978).

▪ As of 1976, most commentators listed Missouri among the states which strictly adhered to the requirement of mutuality of estoppel.... This court has not expressly abolished the requirement of mutuality but has allowed defensive use of issue preclusion by a stranger to the prior suit against a party to the prior suit. See, *Arata v. Monsanto Chemical Co.*, 351 S.W.2d 717 (Mo. 1961). The Missouri Court of Appeals, Western District, has, however, expressly abolished the requirement of mutuality of estoppel and adopted the Bernhard Doctrine from *Bernhard v. Bank of Am. Nat. Trust & Sav. Assn.*, supra: *LaRose v. Casey*, supra, at 749–750.[2] The Bernhard Doctrine requires a case-by-case, issue-by-issue review of the appropriateness of the application of collateral estoppel by a stranger to the prior suit. The court in reviewing whether the application of collateral estoppel is appropriate

---

1. Those interested in the present state of the doctrine of res judicata may consult C. Wright, A. Miller and E. Cooper, 18 Federal Practice and Procedure, Chapter 13 (1981) [hereinafter *Wright, Miller* and *Cooper*]; F. James and G. Hazard, Civil Procedure, Chapter 11 (2d ed. 1977).

2. The "mutuality" rule is explained by Professor Hazard as follows: "A judgment, as we have seen, determines both claims and, if based on actual litigation, issues. The same issue may arise in subsequent litigation involving another claim. If that subsequent litigation is between the same parties, the determination in the first action is conclusive in the second action under the rule of issue preclusion or 'collateral estoppel' as it was formerly called. The traditional rule was that the determination was not conclusive, however, if the second action involved different parties even though one of them had

been a party to the first action and had unsuccessfully litigated the issue on that occasion. Thus, if A was injured as the result of B's operation of a car owned by C, and A sued C contending that B acted negligently but lost on a finding that B had not been negligent, A was not prevented from suing B and therein relitigating the question of B's negligence. The reason offered to support this conclusion was that if A had won the first action, the determination would not be binding on B because B was not a party to that action; since B was not bound, the estoppel resulting from the first action was not mutual i.e., a two-way street as between A and B; and therefore A should not be bound either. This was the 'mutuality' rule." *James & Hazard, Civil Procedure, supra*, § 11.24, pp. 577–578. The *Bernhard* case repudiated the mutuality doctrine, but we are not concerned with mutuality here.

should consider: (1) whether the issue decided in the prior adjudication was *identical* with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or is in privity with a party to the prior adjudication.... Most courts have added a fourth factor to the three enunciated ... in the Bernhard case: whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.... Fairness is the overriding consideration in determining whether or not to apply the Doctrine of Mutuality...."

The plaintiff argues that although the defendants were not named parties to the prior suit, "it does not necessarily follow that they are not bound by the judgment." Plaintiff argues that the doctrine of "virtual representation," applied by this court in *Sierk v. Reynolds*, 484 S.W.2d 675 (Mo. App.1972), should apply here. It is further argued that the defendants should be bound by the result in the first action because a mortgagor and his mortgagee are in privity. We cannot agree with either argument advanced by the plaintiff.

■ In *Sierk v. Reynolds*, 484 S.W.2d 675, the city of Springfield undertook to issue special tax bills to defray the cost of constructing sanitary sewers. Several landowners in the sewer district sought to enjoin issuance of the special tax bills but suffered an adverse result in the trial court. The tax bills were assigned, suit was brought by the assignee and judgment was had by the assignee. The defendant appealed. This court held that the defendants, against whom the special assessment was levied, were bound by the judgment in the injunction suit under the doctrine of "virtual representation." *Sierk v. Reynolds*, 484 S.W.2d at 679. In support of our conclusion, we cited *Drainage Dist. No. 1 Reformed v. Matthews*, 361 Mo. 286, 302–303, 234 S.W.2d 567, 573 (1950), as follows:

" 'In the absence of fraud or collusion a judgment for or against a municipal corporation, county, town, school or irrigation district, or other local government agency or district, or a board of officers properly representing it, is binding and conclusive on all residents, citizens and taxpayers *in respect to matters adjudicated which are of general or public interest such as questions relating to public property, contracts or other obligations.* The rule is frequently applied to judgments rendered in an action between certain residents or taxpayers and a municipality, county or district or board or officer representing it, it being held that all other citizens and taxpayers similarly situated are represented in the litigation and bound by the judgment in the absence of fraud or collusion. The rule is applicable to persons who have notice of the suit and even to persons without actual notice of the suit.' " (Emphasis added).

The court further noted in the same case, 361 Mo. at 304, 234 S.W.2d at 574, that:

"Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment."

It has been noted by modern commentators that the doctrine of "virtual representation" is in fact very narrow; it has been applied in the federal courts to foreclose successive taxpayer suits challenging the same tax levy, as in the *Sierk* case, but its application has otherwise been very limited. *See 18 Wright, Miller & Cooper* § 4457, p. 499, n. 16. Certainly no matter of public interest, such as a question relating to public property, contract or other public obligation was litigated in the prior action with which we are concerned on the appeal before us. We conclude the doctrine of "virtual representation" is not applicable here.

■ The first factor to be considered is whether the issue decided in the former suit was identical with the issue presented in the present action, or to use the language of the older precedents, whether the

issue presented here was necessarily decided in the first action. The question decided in the first action was whether Jess Brown was mentally incapable of conveying the real property to Gary and Donna Brown at the time of conveyance. *Estate of Brown v. Brown*, 722 S.W.2d at 345. The question here is whether a mortgage executed by Gary and Donna Brown is necessarily invalid. Despite counsel's preoccupation with *McKenzie v. Donnell*, 151 Mo. 431, 52 S.W. 214 (1899) and *McKenzie v. Donnell*, 151 Mo. 461, 52 S.W. 222 (1899), an incompetent's deed is not of necessity void, even by the authority cited. *McKenzie v. Donnell*, 151 Mo. at 454–455, 52 S.W. at 220. *See also Blount v. Spratt*, 113 Mo. 48, 55–56, 20 S.W. 967, 969[2] (1892); *Wigginton v. Burns*, 216 S.W. 756, 759–760[3][4] (Mo.1919). Without addressing those instances in which a mortgagee may be entitled to the protection afforded a bona fide purchaser for value, *see Blaise v. Ratliff*, 672 S.W.2d 683, 688[3–5] (Mo.App.1984), we can say that the issue decided in the first case—Jess Brown's capacity to execute a deed—is not *identical* to the issue presented in this case, which was whether a mortgage executed by Jess' grantee was invalid.

The second consideration enumerated in the *Oates* case is whether the prior adjudication resulted in a judgment on the merits. In this case, the prior suit did result in an adjudication on the merits, and that aspect of the case need not be discussed further.

■ The third inquiry required by *Oates* is whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. The defendants were not parties. Were they "in privity" with the mortgagor? "Privity" as used in the doctrine res judicata means mutual or successive relationships to the same rights or property constituting the subject matter of the litigation; and to make one "privy" to an action he must have acquired his interest in the subject matter of the action subsequent to the commencement of the suit or rendition of judgment. *Mathison v. Public Water Supply District No. 2*, 401 S.W.2d 424,

431 (Mo.1966). Here there was no mutual or successive relationship to the same right, or property; the right or property of the defendants in the prior suit was presumably a fee simple title held as husband and wife; a deed of trust in the nature of a mortgage given on land to secure the payment of a debt is a lien and nothing more; the mortgagee's interest is neither an estate in land nor any right to any beneficial interest therein. *R. L. Sweet Lumber Company v. E. L. Lane, Inc.*, 513 S.W.2d 365, 368, 76 A.L.R.3d 596, 599–600 (Mo. banc 1974). Moreover, the mortgagee appears to have acquired its interest before, rather than subsequent to the commencement of the prior action or rendition of the judgment therein. On the basis of general principles stated by our courts, the defendants were not "in privity" with their mortgagors.

■ Further, while the precedents have been variously rationalized, it seems to be the general law that a judgment against a mortgagor is not binding on the mortgagee unless he was made a party to the action, or actively participated in the litigation or the judgment was rendered prior to the execution of the mortgage. 50 C.J.S. Judgments § 803, p. 348 (1947). One of the leading cases, often cited, is *Chase National Bank v. City of Norwalk, Ohio*, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934). In *Chase National*, the mortgagor, a power company, had mortgaged its property by deed of trust to secure a bond issue. The City of Norwalk revoked the mortgagor's franchise and ordered it to remove its poles, wires and other equipment from the city streets within 30 days. The mortgagor refused, and was ousted of its franchise by an action in quo warranto. The trustee was not made a party respondent in the action in quo warranto; the trustee did not intervene nor seek to intervene in the action. Before any step was taken to enforce the judgment of ouster, the trustee brought an action in federal district court to enjoin enforcement of that order. The district court issued an injunction but the court of appeals reversed. In reversing the judgment of the court of appeals, the

United States Supreme Court held, inter alia, that:

> "... [U]nder well settled principles of jurisdiction, governing all courts, a decree against a mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made a party to the proceedings...."

*Chase National Bank v. City of Norwalk, Ohio,* 291 U.S. at 438, 54 S.Ct. at 478, 78 L.Ed. at 899. In *Gladowski v. Felczak,* 346 Pa. 660, 31 A.2d 718, 151 A.L.R. 418 (1943), it was held that the grantee's mortgagees were not concluded by a determination that the mortgagor's deed was void because the mortgagees were not parties to the litigation declaring the deed void and the litigation was commenced after the mortgage was executed. Similar rulings are found in *Mitchell v. Austin,* 266 Ala. 128, 94 So.2d 391 (1957) and *National Public Service Insurance Co. v. Welch,* 81 Ariz. 156, 302 P.2d 926 (1956). Upon the record and the authorities cited, we conclude the defendants in this case were neither parties to nor in privity with the defendants in the prior adjudication.

The final factor for consideration, whether the party against whom collateral estoppel is now asserted had a full and fair opportunity to litigate the issue in the former suit, simply cannot be ascertained from the record before us. It is not necessary, however, to pursue the ultimate issue further. Because the issue decided in the prior adjudication was not identical to the issue presented in the present action, and because the defendants were neither parties to the prior adjudication nor in privity with a party thereto, the doctrine of collateral estoppel does not apply to this case. The trial court reached the correct result and the judgment is accordingly affirmed.

MAUS and PREWITT, JJ., concur.

FLANIGAN, P.J., concurs in result.

FLANIGAN, Presiding Judge, concurring in result.

I concur in the result. Instead of proving, in this action, that Jess Brown was incompetent when he executed the deed of April 15, 1983, to Gary Brown and Donna Brown, the plaintiff merely stipulated with the defendants that the deed "was set aside" in the prior action to which defendants were not parties. I agree that neither the doctrine of res judicata nor the doctrine of collateral estoppel may be invoked, under the circumstances here, in favor of the plaintiff and against the defendants. This is true because, as stated in the principal opinion, a judgment against a mortgagor is not binding on the mortgagee when the proceedings were begun after the execution of the mortgage and the mortgagee was not a party thereto or an active participant therein. See 50 C.J.S. Judgments § 803, p. 348.

The principal opinion mentions "counsel's preoccupation with *McKenzie v. Donnell,* 151 Mo. 431, 52 S.W. 214 (1899) and *McKenzie v. Donnell,* 151 Mo. 461, 52 S.W. 222 (1899)." This court is not presented here with the question of whether the last cited *McKenzie* opinion would have been of aid to plaintiff if plaintiff, in the instant proceeding, had properly proved that Jess Brown was incompetent to execute the deed of April 15, 1983, instead of mistakenly relying upon the prior judgment to constitute such proof.