**In the Matter of the ESTATE of Elmer A. GOULD, Deceased.**

**Appeal of Wayne R. STARR, Jr.**

**No. KCD 27595.**

Missouri Court of Appeals, Kansas City District.

Jan. 31, 1977.

Motion for Rehearing and/or Transfer Denied Feb. 28, 1977.

Application to Transfer Denied April 11, 1977.

Thomas M. Sullivan, Eileen S. Sullivan, Downey, Sullivan & Fitzgerald, Kansas City, for appellant.

James L. Gillham, Independence, I. Lee Kraft, Kansas City, for respondent.

Before TURNAGE, P. J., and WEL-BORN and HIGGINS, Special Judges.

ANDREW JACKSON HIGGINS, Special Judge.

Appeal from judgment on trial de novo, Section 472.250, RSMo 1969, which, *inter alia*, removed Wayne R. Starr, Jr., as executor, denied his application for fees, and ordered him to make restitution to the estate in sum $126,741.40, for money improperly drawn by him as fees. The questions are whether Wayne R. Starr, Jr., has been guilty of misconduct and wrongful conduct as a fiduciary in the Estate of Elmer A. Gould; and, if so, whether such misconduct and wrongful conduct justified his removal as executor and denial to him of compensation. Affirmed.

Elmer A. Gould died testate October 20, 1968, survived by his widow, Sylvia T. Gould, and his three minor children, Mary Elizabeth, Patricia Elizabeth, and Joan Ilene. His Last Will and Testament with three Codicils was admitted to probate October 28, 1968. Under the will, Sylvia T. Gould received her residence, household possessions, and furnishings; Christine L. Moreland received certain buildings and contents, the right to occupy the buildings rent free, the right to purchase them on first refusal, and $1,000 cash. The residue of the estate went to "WAYNE R. STARR, JR., my attorney * * * as the first trustee, and CHRISTINE L. MORELAND

* * * as the second trustee, and the EXCELSIOR TRUST COMPANY * * * as the third trustee, all as joint trustees" of the "Gould Trust" for the use and benefit of testator's three daughters.[1] Wayne R. Starr, Jr., was named executor of the estate and was designated attorney for the estate and the trust.

The codicils were devoted to recitals of bitterness between testator and his wife, and to forecasts of difficulties Mr. Starr would encounter in his administration. They were also devoted to provision for adequate compensation for Mr. Starr and spoke of "absolute discretion" with respect to fees.

Wayne R. Starr, Jr., was granted Letters Testamentary, and embarked on the administration of the Gould estate. Administration of the estate proved difficult because of the nature and extent of the testator's assets, inadequate records, and complications due to personality clashes between Mr. Starr on one side and the testator's widow and children on the other. These difficulties came to a head on December 2, 1971, when the probate court commenced a hearing on: Petitions of Patricia Elizabeth, Mary Elizabeth, and Joan Ilene Gould, previously filed October 5, 1971, and November 26, 1971, seeking removal of Wayne R. Starr, Jr., as executor; petition of I. L. Kraft, guardian ad litem of said children, filed during the hearing, also seeking removal of Mr. Starr as executor; application of Wayne R. Starr, Jr., executor and attorney, for approval of payment to Wayne R. Starr, Jr., of attorney's and executor's fees in sum $126,491.40; and so-called "Master Application" for executor's and attorney's fees of Wayne R. Starr, Jr., executor and attorney, filed November 30, 1971, seeking to increase the hourly rate for computation of all such fees paid or to be paid.

The children's own petition for removal of the executor charged that Wayne R. Starr, Jr., had breached his duties as a fiduciary by failure to discharge his official duties and by "fraudulent incidents," including diversion of $20,000 "earmarked for the minor heirs."

The guardian's Petition for Removal charged that Wayne R. Starr, Jr., had "breached his fiduciary capacity by actions contrary to the benefit and best interests of the heirs of the estate; that he failed to discharge his official duties; that he committed waste of such estate; that he committed mismanagement of said estate; and further that upon his Application to the Probate Court as Executor herein, he secured an Order of said Court to transfer funds from the estate to the testamentary trust contained in the above described will of the deceased, such Order being premised upon his Application that funds so transferred would be used for the use and benefit of the minor Gould children named therein, and that he thereafter, acting also as one of the Trustees of said Trust, allowed, permitted and participated in said funds having been so transferred to be paid to himself and others and that no portion of said funds were paid to said minor Gould children nor did they receive the use and benefit thereof, all contrary to his Application to this Court as Executor herein."

The probate court hearing extended over seventeen days. Testimony covered 2136 transcript pages and involved 212 exhibits. The probate court judgment removed Wayne R. Starr, Jr., as executor and was adverse to him with respect to his "Master Application" and various other applications for fees.

Wayne R. Starr, Jr., appealed to the circuit court, where the matter was tried de novo on the petitions for removal and the applications for fees previously filed and heard in the probate court.

The trial de novo required seven days during which the transcript of evidence and exhibits in the probate court, and additional testimony covering some 800 pages, were

---

1. "Trustees' Memorandum" of January 21, 1970, shows that Excelsior Trust Company had withdrawn and declined to serve, and the remaining trustees selected Elwyn L. Cady, Jr., an attorney, as the third trustee, as provided in the will.

received. The trial court made findings and conclusions including the following:

"Wayne Starr was attorney for decedent Elmer A. Gould. He was originally employed by Gould in connection with domestic troubles Gould was having with his wife, Sylvia. Starr drafted Gould's last will and testament together with three codicils thereto. A reading of the will and codicils partially demonstrates the animosity existing between decedent and his wife. . Starr has become the alter ego of decedent for the practical purpose of continuing the controversy that existed between the spouses prior to decedent's death. After decedent's death, Starr, who had by virtue of the will and codicils drafted, become decedent's Executor, attorney for Executor, Trustee and attorney for Trustee, began to administer the decedent's Estate under Order of the Probate Court. Sylvia Gould opposed every act of Starr.

"Decedent had accumulated a large quantity of property, both real and personal, located in Jackson and Clay Counties. Because of the volume of personalty, it was difficult to inventory all of the property and with the continuous opposition of Sylvia Gould, Starr's task was made even more difficult. * * *

"During the period of time in question up to the beginning of the evidentiary hearing in the Probate Court on December 2, 1971, Starr paid to himself [$126,741.40] from the Probate Estate and in addition, $74,550.00 from the Testamentary Trust of which he, Christine Moreland (Decedent's paramour) and Elwin L. Cady, Jr., were Trustees. * * * out of the total funds of over $87,000.00 handled by Starr in the Trust Estate, only $1,000.00 was used on behalf of the decedent's daughters who were the beneficiaries of the Trust and $74,550.00 was used by Starr and his fellow Trustees for their personal gain.

"It is clear that the burden of proof with respect to the removal of Starr as Executor and attorney rests with the party seeking the removal, in this case, the three Gould children through their Guardian Ad Litem appointed in both the Circuit Court and Probate Court. That burden has been met. The burden with respect to the allowance of attorney's fees rests with applicant Starr. He has not met that burden.

"Throughout the evidence, both at the Probate hearing and here, the Court is impressed with Starr's evasive, voluble answers and remarkable lack of candor. Only after confrontation with facts unfavorable to Starr's position did he grudgingly concede that he had committed certain acts of questionable propriety. * * *

"It would be sufficient to deny Starr any compensation [in] that on July 7, 1970, Starr applied for and received an Order of the Probate Court to transfer assets from the Probate Estate to the Trust Estate in the amount of $15,000.00 for the ostensible purpose of providing for the needs of the minor children. That application by Starr was false. Nothing was done for the minor children. The sum transferred was paid by Starr to himself as attorney's fees and not until later was $1,000.00 expended on the children's behalf. * * *

"If more is needed to demonstrate Starr's breach of his duty in this Estate, there is proof that although the Probate Court had entered an Order directing the Executor to take charge of the real property, Starr sold what is referred to as the Garney property for $500,000.00 and received along with his co-trustees, $60,000.00 in cash unknown to the Probate Court. This money was put into the Trust Estate rather than the Probate Estate and used by Starr to pay himself $56,000.00 in attorney's fees. * * * although the buyer and his attorney understood Probate Court approval of this transaction had been made, Starr as Executor of the Estate, without Court approval, entered into an unconditional guarantee to pay on behalf of the Estate a $60,000.00 note [covering the cash receipt] executed by the Trustees. While this evidence relates to Starr's handling of the Trust Estate * * [which] is not directly before this Court in this appeal * * *, [it] shed[s] considerable light upon the manner in which Starr

approached his fiduciary responsibility to preserve the Estate for the benefit of the three children of decedent. * * * it is difficult to escape the conclusion that Starr's stewardship of this property was for his own benefit rather than the children of decedent.

"Unexplained by Starr is * * * that he charged himself and his co-trustees a so-called finder's fee of 2% for handling the Garney transaction, all at a time when the property being sold was an asset of the Probate Estate and not of the Trust Estate. No timely report of this commission was ever made to the Probate Court nor was that Court's approval ever sought for this most irregular and unusual transaction.

"In addition to the foregoing, there is evidence of mismanagement on Starr's part in failing to take action required of him by the Court. * * * He failed to restrict his account at the Excelsior Springs Trust Company as ordered by the Court on July 3, 1969. Additionally, Starr did not conclude the Probate inventory. He filed improper and faulty settlements and although requested to do so by Probate Court auditors, failed to correct such settlements. Because of mistakes made by him in claiming attorney's fees in both the federal estate tax return and the annual fiduciary returns the Estate may be subjected to possible penalties and interest by the federal government.

"Of questionable propriety was Starr's failure to list as an asset in the inventory a promissory note for $5,639.93 executed by him, payable to decedent if living, or if not, to the Testamentary Trust.

"The foregoing matters are mentioned not only to demonstrate Starr's unfitness to continue to act as Executor and attorney but also to demonstrate wrongful conduct on his part which forfeits his right to any fee as either Executor or attorney in this Estate. It follows that the Order of the Probate Court removing Starr as Executor and as attorney and appointing a successor Administrator Ad Litem was correct.

"By reason of Starr's breach of his fiduciary duty, he is not entitled to any compensation and his claim for attorney's fees must be denied in its entirety and he must reimburse the Estate for all monies improperly taken by him in the Probate Estate in the sum of [$126,741.40]."

Judgment was rendered accordingly.

Appellant does not question the above findings with respect to the facts. Suffice to say that review of the probate and circuit court transcripts provides ample support for such findings of fact.

Appellant's position is that he had absolute power and discretion under the will with respect to payment of fees to himself; that the fees he received were fair compensation in the circumstances of his administration; and that he did not act in any improper or wrongful manner in receiving the fees he paid himself because the discretion given him obviated the necessity to obtain approval of his fees in the probate court.

During pendency of this matter in the probate and circuit courts, and on this appeal, *In re Starr, Jr.*, 538 S.W.2d 334 (Mo. banc 1976), was decided. That was a disciplinary proceeding under Rule 4 (Code of Professional Responsibility), in which Wayne R. Starr, Jr., was disbarred for misconduct as "executor (and attorney) for the estate as well as one of three trustees (and attorney)" in the probate of the Last Will and Testament of Elmer A. Gould in Jackson County, Missouri.

The disciplinary proceeding against Mr. Starr was initiated by an information charging that he "made application to the Probate Court for and obtained an order authorizing a partial distribution of $5,000 from said estate to himself, Elwin Cady and Christine L. Moreland as trustees of the testamentary trust established by the Last Will and Testament of said Elmer A. Gould, upon the following representation: 'That the payment of a partial distribution will allow the trustees, if they desire, to pay the present educational expenses of the children and to possibly assist the estate in settling a number of problems which con-

cern the estate as well as the trust.' * * made application to the Probate Court * * * for and obtained an order authorizing a partial distribution of $15,000 from said estate to himself, Elwin Cady and Christine L. Moreland as trustees of the testamentary trust established by the Last Will and Testament of said Elmer A. Gould upon the following representation: 'There are many needed things that need to be done by the trustees for the minor children and it is important that a partial distribution of $15,000 be made to the trust at this time. Said distribution will not prejudice the estate as there are substantial assets to cover all claims many times.' From the aforesaid partial distributions totalling $20,000, respondent paid himself at least $14,300, ostensibly as fees for services in some capacity, all without the approval of the Probate Court, or of any other court, or of the beneficiaries of said estate. No portion of the partial distributions mentioned above were disbursed or used by respondent or his co-trustees for the educational expenses of the testator's three minor children. Respondent failed to include in the inventory of the assets of said estate filed in the Probate Court of Jackson County, Missouri, a $5,639.93 note made, executed and delivered by respondent in consideration of $5,639.93 loaned to him by the said Elmer A. Gould, deceased, in his lifetime. On or about June 19, 1970, respondent opened a bank account designated the 'E. A. Gould Testamentary Trust' account at the Noland Road Bank * * * and between said date and February 17, 1972, deposited therein moneys belonging to the said estate amounting in all to at least $79,000. With the possible exception of the $5,000 mentioned * * * above and the $15,000 mentioned * * * above, no orders were obtained by respondent from the Probate Court * * * authorizing the transfer of said moneys belonging to the said estate to the trustees of the testamentary trust or to said Noland Road Bank account. In the period between June 19, 1970, and December 6, 1971, * * * out of the moneys deposited in said 'E. A. Gould Testamentary

Trust' account at the Noland Road Bank, respondent withdrew from and paid to himself, ostensibly as attorney, sums of money totalling at least $73,550, all without the approval or an approving order of the Probate Court * * * or of any other court, or of the beneficiaries of said trust."

The Master found: " * * * that respondent intended to deceive the Probate Court by failing to put in the verified application for partial distribution dated December 4, 1969, that a substantial portion of the money was to be used for attorney's fees" in that "when respondent prepared this application for partial distribution, he intended to use a substantial portion thereof for legal fees. * * * On December 3, 1969, he had been directed by the Trustees to make this application in the amount of $35,000 * * *. Thirty Thousand of the $35,000 mentioned in the application was to be used to pay respondent a retainer to institute an action to determine the competency of Sylvia Gould * * *. Instead of specifying that a portion of the money was actually to be used for legal fees, respondent stated in his verified application: 'That the payment of a partial distribution will allow the Trustees, if they desire, to pay the present educational expenses of the children and to possibly assist the Estate in settling a number of problems which concern the Estate, as well as the Trust.' * * * that respondent intended to deceive the Probate Court" in the same manner with respect to the verified application for partial distribution dated July 7, 1970.

"The conduct of respondent in failing to disclose that he had executed a promissory note in favor of the deceased in the amount of $5,639.93 dated April 24, 1968 was deceitful" in that "Respondent failed to include the note in the inventory filed in the Probate Court of Jackson County, Missouri, until December 4, 1973. Respondent failed and neglected to mention the said note in the 'June 15, 1970 annual accounting.' Respondent failed to mention said note in his letter to the Guardian of the children dated February 24, 1971.

"The conduct of respondent was deceptive with the respect to the sale of the Garney property" in that "On June 17, 1970 the Trustees executed a $60,000 promissory note payable to Charles Garney. In his application for approval of this sale filed on June 18, 1970, respondent failed to mention this loan to the Trust, which was a part of the terms and of the transaction of the sale. On June 19, 1970, he funded the Trust with the $60,000 loan by opening an account at the Noland Road Bank and on that same day paid himself an attorney's fee of $40,-000. Five days later he paid himself an additional attorney's fee of $17,300. In his testimony before Judge Berry relative to his possible removal as Executor, he failed to disclose the $60,000 loan made to the Trust. After being requested by the Guardian of the minor children to give an accounting of the funds in the Trust, Mr. Starr failed to disclose this $60,000 transaction to the Guardian, Mr. Kraft, in his letter of February 24, 1971, a copy of which was sent both to the Probate Court of Jackson County and the Circuit Court of Jackson County.

"Of the total amount of $80,000 which became available to the Trust, $79,000 was actually deposited in the Trust Account and respondent was paid, according to his own accounting, $74,550 in legal fees."

The Master concluded that: "Respondent's conduct, as illustrated by the foregoing findings * * * was deceitful," and recommended disbarment.

Mr. Starr's position in the disciplinary proceeding, both before the Master and in the Supreme Court, was the same as that on this appeal, i. e., that he had absolute discretion with respect to payment of fees to himself, and that he was guilty of no misconduct or wrongful conduct as to cause his removal or a denial of compensation.

The Supreme Court, by its finding, adopted the Master's findings, conclusions, and recommendation, and ordered Mr. Starr disbarred.

■ The foregoing demonstrates a classic case of collateral estoppel in that the issues decided in *In re Starr*, supra, were identical to the issues of Mr. Starr's present appeal, i. e., that he was guilty of misconduct or wrongful conduct as executor and attorney in the estate of Elmer A. Gould, particularly with respect to fees which he paid himself; that there was a final judgment on the merits, i. e., disbarment on grounds of such misconduct and wrongful conduct; and that the present appellant, Mr. Starr, was a (the) party to the prior adjudication.

*In re Starr*, supra, is, of course, binding on this court, and its prior determination of the question of Mr. Starr's misconduct and wrongful conduct is conclusive on this appeal. *In re Estate of Laspy*, 409 S.W.2d 725 (Mo.App.1966); *Gerhardt v. Miller*, 532 S.W.2d 852 (Mo.App.1975); *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).[2]

■ Section 473.140, RSMo 1969, provides that if an executor "fails to discharge his official duties, or wastes or mismanages the estate," he may be removed. Section 473.153(4), RSMo 1969, provides that if the court finds that an attorney's services or actions in connection with an administration are "wrong, improper or injurious to the estate, no attorney fee whatsoever shall be allowed." Accordingly, because Mr. Starr's conduct as executor was improper and his conduct as attorney wrong, he was properly removed and denied all compensation. *In re Alexander's Estate*, 360 S.W.2d 92, 106–107[28–31] (Mo.1962). The will did give Mr. Starr considerable discretion and authority with respect to his administration and fees. It did not, however, give him authority to practice deceit or profit from wrongdoing. *In re Estate of Laspy*, supra.

■ Appellant contends also that denial of compensation on grounds of misconduct was never before the probate court and, consequently, not before the circuit court; and that there was no pleading in the cir-

**2.** See also Restatement of the Law Second, Judgments, Tentative Draft No. 1, March 28, 1973, pp. 144–170, discussing § 68. "Issue Preclusion—General Rule."

**870**

cuit court upon which to consider denial of all compensation.

Suffice to say that the removal petition put the executor's conduct in issue, and the "Master Application" put all fees in issue whether previously approved and paid, paid without approval, or sought to be paid.

Judgment affirmed.

All concur.