**STATE ex rel. Robert O'BLENNIS, Relator,**

v.

**The Honorable George ADOLF and The Honorable William Nicholls, Judges of the Circuit Court of the City of St. Louis, Mo., Respondents.**

No. 49752.

Missouri Court of Appeals, Eastern District, Division Four.

May 21, 1985.

---

1. Respondent's motion to dismiss the appeal and for damages pursuant to Rule 84.19 is over-ruled.

Robert Presson, Jefferson City, for relator.

Robert Herman, St. Louis, for respondents.

SMITH, Presiding Judge.

Relator seeks our writ of prohibition to command respondents to refrain from further proceeding in an underlying action for legal malpractice. That case is entitled *Charles Poole v. Robert G. O'Blennis.* Respondent Nicholls denied relator's motion for summary judgment. The matter is currently pending before respondent Adolph.

The litigation has its genesis in an indictment in October 1974, charging Poole with assault with intent to kill. O'Blennis, a public defender, was appointed to represent Poole on that charge. O'Blennis, pursuant to that appointment represented Poole throughout trial, sentencing, and appeal. Poole was found guilty of assault with intent to kill with malice in July, 1976, and was sentenced to twenty years imprisonment as a second offender. That conviction was affirmed on appeal. *State v. Poole,* 556 S.W.2d 493 (Mo.App.1977). Poole filed a motion pursuant to Rule 27.26 to correct, vacate, or set aside his conviction and sentence on the basis that he had ineffective assistance of counsel at his trial. Relief on that motion was denied by the trial court. In October, 1983, we reversed the action of the trial court and remanded for further proceedings. *Poole v. State,* 671 S.W.2d 787 (Mo.App.1983). Poole's suit against O'Blennis was filed in January, 1984.

On November 7, 1984, Poole pleaded guilty to the original charge of assault with intent to kill with malice. Pursuant to a plea bargain with the prosecutor Poole was sentenced to imprisonment for seven years. Prior time served on the 1976 conviction was allowed as a credit, which exceeded the seven year sentence imposed on the 1984 conviction. Poole was immediately freed.

At the guilty plea hearing Poole was represented by counsel originally appointed to represent him in the 27.26 proceeding. Counsel made the following statement to the Court in the presence of Poole:

"Mr. Poole has indicated to me, up to today, that he did desire to have this matter tried before a jury. I indicated to him that I was prepared to try it before a jury, had spent a lot of time in the last week or so reviewing the file, and have talked to Mr. Poole, and a witness that I have a subpoena served upon, a Jerome Stevens, who would purport to be an alibi witness, in effect, for Mr. Poole.

This morning, Mr. Poole indicated to me that he desired to, in effect, enter a plea of guilty to the charge pending before this court. I have advised him that, in my opinion, that would diminish if not absolutely defeat the civil suit that he had pending as a result of what had happened or did not happen in the past; and that I was leaving the decision solely to him as to whether or not he wanted to enter a plea of guilty or not enter the plea of guilty and proceed on to trial. I explained to him what the recommendation of the Circuit Attorney was if he did enter a plea of guilty that the recommendation would be that he would get credit for the time served and would not have to serve any additional time. I explained to him that, conceivably, he could be convicted and may have to do more time, but that I also told him, in my opinion, I did

not think it was likely. But, in any event, I wanted to explain to the Court and make it clear on the record that the decision to do this is solely Mr. Poole's and that I am willing to represent him in whatever matter he wants to pursue."

Poole was then placed under oath to answer questions of the court in order for the court to decide "whether or not to accept your plea of guilty." The trial court then conducted an extensive questioning of Poole designed to determine the voluntariness of the plea and Poole's understanding of his rights. To a question by the court if Poole had any questions before proceeding further, Poole stated:

"No more than directing my questions to the Court, your Honor. I have been down—I have been incarcerated for seven years, and since I have been out, I have been out for a year and several months. I feel, it was best for me to do the thing that was right. I mean, I can lie to everybody else, but not myself. I mean, I'm tired. I mean, I'm tired of the penal system. I don't want any of that anymore. I want to remain out here in society and try to be a citizen as best as I possibly can. I'm just flat-foot tired. You know, running back and forth down to court. I want to do what I have to do as a man, my responsibility. And that's why I gave the statement that I gave today."

The court then inquired whether "along the lines of the statement that you just made, Mr. Poole: Are you pleading guilty here today because you are guilty of this crime?" Poole's response: "To be truthful with the Court and the people that are present, yes. I must say that."

The prosecutor's summary of the evidence of the state was that Poole fired at a Mr. Wilson with a shotgun but missed him. Poole was asked if the statement of the prosecutor was substantially true and correct, to which Poole answered, "Yes sir, Your Honor." He also affirmatively responded that his willingness to plead guilty was the result of the plea bargain reached between his attorney and the prosecutor.

The Court found a factual basis for the plea, accepted the plea of guilty and found Poole guilty beyond a reasonable doubt.

O'Blennis filed a motion for summary judgment on the basis of Poole's plea of guilty in November 1984. In response to that motion Poole filed an affidavit in which he denied having shot at Mr. Wilson or any other person or of performing any other act charged by the prosecuting attorney in the criminal case. He also stated that he pleaded guilty "only to avoid the mental anguish of a second jury trial on these charges and to eliminate the possibility of returning to prison." The trial court denied the motion for summary judgment and we issued our preliminary writ.

■ We turn first to the availability of prohibition to review the denial of the motion for summary judgment. Normally we are reluctant to utilize the writ for the purposes of reviewing a denial of summary judgment or to correct trial court error. *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983). But as stated in *State ex rel. General Electric Co. v. Gaertner,* 666 S.W.2d 764 (Mo. banc 1984) (Rendlen, J. concurring): "Forcing upon a defendant the expense and burdens of trial when the claim is *clearly* barred is unjust and should be prevented." Prohibition is generally the appropriate remedy to forestall unwarranted and useless litigation. *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184 (Mo. banc 1985); *State ex rel. Hamilton v. Dalton,* 652 S.W.2d 237 (Mo.App.1983) [1–5]. The issue before the trial court and us is solely a matter of law. There is no dispute regarding the facts which present that issue. If relator is correct then he has an impregnable defense against Poole's suit. There is no right of appeal from the denial of the motion for summary judgment and refusal to utilize the writ will compel defendant to undergo what we have concluded is clearly unwarranted and useless litigation at great expense and burden. Under the factual situation here, we conclude that prohibition is an available remedy. We turn to the merits.

■ Relator contends that Poole is conclusively bound under the principles of collateral estoppel by his guilty plea in November, 1984. That plea, relator opines, establishes Poole's guilt of the assault crime and concomitantly precludes his suit for malpractice because of the absence of proximate causation of his injuries from any negligence of relator. In *Roehl v. Ralph*, 84 S.W.2d 405 (Mo.App.1935) [2, 3] this court held that in a case seeking to recover for legal malpractice the existence of a causal connection between the lawyer's negligence and the plaintiff's loss and injury is a necessary element of plaintiff's cause of action which he bears the burden of establishing. See also *Lange v. Marshall*, 622 S.W.2d 237 (Mo.App.1981). *Roehl v. Ralph, supra*, further held that:

> "... it was essential that plaintiff show that he actually had a valid defense to the note which he might have supported by substantial evidence so as to have required its submission to the jury, and which, had the jury followed the law as it is to be presumed that they would have done, would have impelled the bringing in of a verdict in his favor. This for the reason that any failure, neglect, or omission on Ralph's part to have set up a futile and unavailing defense could not be regarded as the proximate cause of plaintiff's having been held to the payment of the note which he admittedly executed, and the case would therefore fail for want of the proof of the essential element of causal connection."

[4, 5].

Poole's charges of malpractice by O'Blennis are that he failed to properly investigate, interview, subpoena and call witnesses, and cross-examine to establish Poole's defenses of misidentification and alibi. As an element of his case against O'Blennis, Poole bears the burden of establishing that he in fact had defenses of misidentification and alibi. Obviously, if Poole committed the charged offense he did not validly have such defenses. The parties are not in disagreement to this point.

■ Collateral estoppel has traveled a less than tranquil path in recent years. It deals with issue preclusion. The nature of collateral estoppel is that a fact appropriately determined in one lawsuit is given effect in another lawsuit involving different issues. *Hudson v. Carr*, 668 S.W.2d 68 (Mo. banc 1984) [1, 2]. Originally the doctrine required a mutuality of estoppel—that both parties were parties or in privity with a party to the original suit. In *Oates v. Safeco Ins. Co. of America*, 583 S.W.2d 713 (Mo. banc 1979) [9–11] the court recognized the availability of collateral estoppel to a non-party to the original action to prevent re-litigation of an issue by a party who had previously litigated the same issue with adverse results. In short, it abolished the requirement of mutuality of estoppel. The court established a four part test to determine the availability of collateral estoppel in such a situation. Those parts are: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. Fairness was held to be the overriding consideration in determining whether or not to require mutuality. *Id.*

In *Oates* it was held that collateral estoppel should not be applied because of a conflict of interest inherent in uninsured motorist cases rendering the use of collateral estoppel inequitable under the facts of that case. In *Hudson v. Carr, supra*, no inequity was found in applying collateral estoppel to plaintiff's personal injury claim based upon a verdict on a property damage claim which assessed his degree of negligence for the accident. Both *Oates* and *Hudson* apply an objective standard in assessing the "full and fair opportunity to litigate" standard.

The use of collateral estoppel falls into two categories—defensive and offensive. In the defensive situation the doctrine is utilized by the party raising the doctrine to prevent a party to the original suit from re-litigating a fact necessary for the latter party to establish to carry his burden of proof. Usually it is utilized by a defendant to preclude a plaintiff from seeking to prove a fact previously decided against the plaintiff in a prior suit to which plaintiff was a party. Offensive collateral estoppel is an attempt by one party to prevent the other party from challenging a fact necessary to the first party's cause of action and on which that party bears the burden of proof. Usually it will involve a plaintiff preventing a defendant from contesting a fact necessary to plaintiff's recovery. The cases reflect that courts have traditionally been less inclined to allow offensive use of the doctrine than its defensive use when mutuality of estoppel is absent.

In *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Court upheld the offensive use of collateral estoppel without mutuality against a challenge that it denied a right to jury trial in federal court. There the defendants had unsuccessfully litigated with the Securities and Exchange Commission over whether a proxy was misleading and false. Plaintiffs then sought to prevent defendants from re-litigating that issue in plaintiffs' stockholder class action seeking damages. In the course of upholding the use of collateral estoppel in that case the Court approved consideration by the trial judge of the "incentive" of the defendants to litigate in the original proceeding. We find nothing in that opinion that makes resolution of the "incentive to litigate" issue dependent on an evaluation of the original losing party's subjective state of mind.

In *Bi-State Development Agency v. Whelan Security Co.,* 679 S.W.2d 332 (Mo. App.1984) [6] we engrafted, by dicta, the tests applied in *Parklane, supra,* for an offensive use of collateral estoppel onto a defensive use of that doctrine. It was upon this basis, and in reliance on *Bi-State,* that the trial court here denied the motion for summary judgment. Poole relies upon his affidavit as to his reasons for entering his plea of guilty to establish his absence of incentive to litigate the criminal charge. We find no binding authority that "incentive to litigate" is to be considered when collateral estoppel is invoked defensively, and no authority that "incentive to litigate" contemplates subjective considerations when the doctrine is invoked offensively.

We turn our attention to the law dealing with prior criminal convictions and their effect upon subsequent litigation involving the criminal defendant. For our purposes the starting point is *In re Estate of Laspy,* 409 S.W.2d 725 (Mo.App.1966). There plaintiff sought to recover from her husband's estate her widow's allowance for one year's maintenance. She had previously been convicted of manslaughter in causing the death of her husband by intentionally shooting and killing him. The court applied the rule that "no one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his iniquity, or to acquire property by his own crime." [1, 2] It held that plaintiff's conviction was conclusive of her guilt of intentionally killing her husband without justification and refused to allow her to present evidence that the killing was in self-defense. In its discussion the court distinguished the offensive use of collateral estoppel involving a conviction from the defensive use of the conviction. While referring to the doctrine of mutuality, the court upheld the utilization of collateral estoppel (even in the absence of mutuality) on public policy grounds and because to deny use of the doctrine would allow plaintiff to collaterally attack her judgment of conviction. The *Laspy* doctrine was applied also in *Wells v. Harris,* 434 S.W.2d 783 (Mo.App.1968) involving a guilty plea, and in *LaRose v. Casey,* 570 S.W.2d 746 (Mo.App.1978) [3–6], *Bradley v. Bradley,* 573 S.W.2d 378 (Mo. App.1978) [3–6], and *Estate of Gould,* 547 S.W.2d 863 (Mo.App.1977) [1]. All of these cases involved the defensive use of collateral estoppel.

Respondent relies upon a line of cases typified by *Ferguson v. Boyd,* 448 S.W.2d 901 (Mo.1970). Those cases involve the offensive use of collateral estoppel. The plaintiff in those cases was seeking to utilize collateral estoppel to prevent the defendant from denying a fact essential to plaintiff's recovery because of a prior conviction which found that fact against defendant.[1] In that situation the rule applied is that the conviction is admissible in evidence for consideration by a jury, but it is not conclusive and may be explained. *See also Howard v. Riley,* 409 S.W.2d 154 (Mo. 1966) [1, 2]; *Pruiett v. Wilform,* 477 S.W.2d 76 (Mo.1972) [4–6]; *Nichols v. Blake,* 418 S.W.2d 188 (Mo.1967) [1, 2]; *Curtain v. Aldrich,* 589 S.W.2d 61 (Mo. App.1979) [1–3].

The distinction between offensive and defensive use of collateral estoppel found in the Missouri cases appears to parallel the federal decisions. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *State Farm Mutual Auto Ins. Co. v. Worthington,* 405 F.2d 683 (8th Cir. 1968); *Nathan v. Tenna Corporation,* 560 F.2d 761 (7th Cir.1977); *Matter of Raiford,* 695 F.2d 521 (11th Cir.1983); *Mayberry v. Somner,* 480 F.Supp. 833 (E.D.Pa.1979).

With these legal principles in mind we turn to the facts before us. O'Blennis seeks to utilize collateral estoppel defensively. His motion for summary judgment is premised upon preventing Poole from presenting evidence to establish that in fact Poole is innocent of the charge to which he pleaded guilty and for which he was convicted. Poole's factual innocence of that charge is an indispensable element of his cause of action. Poole's guilty plea was accepted after explanation to him of his rights, after explanation to him by counsel of its potential effect upon his civil litigation, after extensive questioning under oath by the trial court, and after he had on at least two occasions stated under oath that he was guilty of the offense charged. The extensive procedure followed by the court prior to accepting Poole's plea was in accord with Rule 24.02. The court is precluded under Rule 24.02(e) from accepting the plea unless there exists a factual basis for the plea. Poole's responses under oath established that factual basis as a result of a plea bargain satisfactory to Poole *and* Poole's admission of having committed the acts supporting the charge and the conviction.[2,3]

To exacerbate the situation here we have two statements under oath (the answers at the plea hearing and the affidavit in opposition to summary judgment) which are diametrically opposed and one of which is a false statement of a material fact. Both statements were made to induce a court decision desired by Poole.

In this case involving defensive invocation of collateral estoppel Poole's guilty plea precludes him from denying his guilt of the assault charge. That plea decided the same issue of fact present in his malpractice case; it resulted in a judgment on the merits; Poole is a party to both cases; he had a full and fair opportunity to litigate his guilt or innocence. His subjective reasons for entering the plea do not form a basis for a collateral attack on the judgment of conviction which his malpractice suit is. It would be a dangerous precedent indeed to allow civil litigation premised upon an improper conviction to proceed on

1. Frequently those cases involve conviction or pleas of guilty to traffic violations. We do not read those cases as limited to that fact situation however.

2. *Jepson v. Stubbs,* 555 S.W.2d 307 (Mo. banc 1977), relied upon by relator does not present a situation where the defendant's plea admitted the facts necessary for his conviction. There the facts admitted by the plea were legally insufficient to support conviction, because a failure of legal notice precluded as a matter of law defendant's guilt on the facts admitted. Poole's claim of innocence is based solely on his contention that he did not commit the acts he admitted he committed when he pled guilty.

3. Poole did not seek to invoke the benefits of *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) by pleading guilty but professing his innocence, which would have imposed upon the trial judge a more stringent exercise of discretion.

the basis of a collateral attack upon that conviction particularly where that attack is based on subjective reasons for entering a guilty plea. See *Mayberry v. Somner, supra*. We conclude that to permit the continuation of this litigation would allow Poole:

> "to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime." *In re Estate of Laspy, supra*, [1, 2].

As such it is against public policy for the suit to continue in that it "would indeed shock the public conscience, engender disrespect for courts and generally discredit the administration of justice." *Laspy, supra*, [13].

Writ of Prohibition made absolute prohibiting respondents from further proceeding in Cause number 842–00048. Respondents are directed to grant the motion for summary judgment.

SATZ, J., concurs in separate concurring opinion.

CRANDALL, J., concurs with the opinion of SMITH, J.

SATZ, Judge, concurring.

With reservation, I concur. My reservation stems solely from the procedural propriety of issuing this writ.

The trial court here denied a motion for summary judgment. The court had jurisdiction over the subject matter and the person and, thus, had jurisdiction to make its ruling. If the ruling was erroneous, it can be appealed after final judgment is entered. Therefore, one would think the writ would not lie. Not so. That is not the law in Missouri today and may not have ever been, except, perhaps, during the short life of *State ex rel. Morasch v. Kimberlin*, 654 S.W.2d 889 (Mo. banc 1983).

Prior to *Morasch*, the grounds for an appellate court to issue a writ of prohibition were, at best, imprecise. *Tuchler, Discretionary Interlocutory Review in Missouri: Judicial Abuse of the Writ?* 40 Mo.L.Rev. 577 (1975); Note, *The Writ of Prohibition in Missouri*, 1972 Wash.U. L.Q. 511. The primary cause of this imprecision, I believe, is our courts' ambiguous use of the term "jurisdiction" when confronted with an application for the writ. We use "jurisdiction" to mean judicial authority over the subject matter and the person, but we also use it to mean the judicial power to grant specific relief within that authority. Thus, prior to *Morasch*, our courts issued the writ when the trial court lacked jurisdiction over the subject matter or person, *e.g., State ex rel. Rolla School District No. 31 v. Northern*, 549 S.W.2d 596, 597 (Mo.App.1977); *State ex rel. McCarter v. Craig*, 328 S.W.2d 589, 592 (Mo. banc 1959), and also when the trial court had such jurisdiction but abused its authority to act—abused its discretion—and, thus, was said to act "in excess of" or "without jurisdiction," *e.g., State ex rel. Albert v. Adams*, 540 S.W.2d 26, 31 (Mo. banc 1976); *State ex rel. Pulliam v. Swink*, 514 S.W.2d 559, 561 (Mo. banc 1974).

In a pristine sense, a trial court without jurisdiction over the subject matter or person has no authority to act, either rightly or wrongly. Therefore, its attempt to act should be prohibited. A trial court that has jurisdiction over the subject matter and person, however, can act, both rightly and wrongly, and its wrong acts—errors of law—can be appealed. Nonetheless, our appellate courts select certain of the latter acts and prohibit the attempts of trial courts to complete these acts. This selection, I believe, is done on an ad hoc basis; our courts selecting those wrongful acts—errors of law—which the courts believe are so egregious they must be stopped.

As I understood *Morasch*, and apparently as those judges who concurred in the result understood it, *see Morasch*, 654 S.W.2d 892–94, the majority of the Court, in effect, stated that the writ of prohibition should only be used to review the trial court's jurisdiction over the subject matter or the person. *Morasch*, 654 S.W.2d 890–92. *See also State ex rel. Hannah v. Seier*, 654 S.W.2d 894 (Mo. banc 1983). This,

however, may have been a misinterpretation of the language used in *Morasch*.

Subsequent to *Morasch*, the Court stated the writ could be used not only to review "the question of trial court jurisdiction" but also could be used "in peculiarily limited situations ... in which absolute irreparable harm may come to a litigant...." *State ex rel. Richardson v. Randall*, 660 S.W.2d 699, 701 (Mo. banc 1983). Moreover, I believe *State ex rel. General Electric Co. v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984) implicitly confirms the conclusion that the grounds for issuing the writ are, perhaps, more varied than those suggested by *Morasch*. In *General Electric*, the majority of the Court, without mentioning *Morasch*, quashed a writ *on the merits* and permitted a trial to proceed on a claim allegedly barred by the statute of limitations. It was in this context that Judge Rendlen made the statement quoted by the majority here, in which he implied the writ should be used to prevent a trial court from "[f]orcing upon a [party] the expense and burdens of trial when the claim is *clearly* barred...." (Emphasis His). *State ex rel. General Electric Co.*, 666 S.W.2d at 768.

Then, in *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449 (Mo. banc 1984), the Court defined the meaning and reach of *Morasch*. More specifically, the Court stated that, in *Morasch*, "we held that violation of a statutory provision ... does not always constitute an act in excess of its jurisdiction," *Id.* at 450 n. 3., and, therefore, for procedural reasons, the preliminary writ there should not have been issued. But, analyzing the trial court's order then before it, the Court went on to say that this order would violate a statutory privilege restricting "the power of a trial court in the discovery process," and "it can be said that violation of the statute constitutes an act in excess of jurisdiction." [1] *Id.* at 450 n. 3.

In its most recent pronouncement, the Court indicated that when an appeal would fail "to afford adequate relief, prohibition [would be] the appropriate remedy to forbear patently unwarranted and expensive litigation, inconvenience and waste of time and talent." *State ex rel. New Liberty Hospital District v. Pratt*, 687 S.W.2d 184, 187 (Mo. banc 1985).

In light of these cases, I now believe *Morasch* made no change in the procedural principles governing the issuance of the writ. An appellate court can use the writ to determine whether the trial court is acting without jurisdiction over the subject matter or the person, *e.g., State ex rel. Rolla School District No. 31 v. Northern, supra,* whether the trial court, having such jurisdiction, is acting in "excess of its jurisdiction," *e.g., State ex rel. D.M. v. Hoester, supra,* whether the trial court's act will cause irreparable harm, *e.g., State ex rel. Richardson v. Randall, supra,* or whether a claim is clearly barred, *e.g., State ex rel. New Liberty Hospital District v. Pratt, supra, State ex rel. General Electric v. Gaertner, supra,* (Rendlen, J., concur-

1. In *D.M., supra,* an adopted daughter sued her father for sexual abuse and sought her father's medical history from his psychiatrist. Asserting the doctor-patient privilege, under § 491.060(5), RSMo Cum.Supp.1983, the father sought the writ to prohibit the disclosure. The daughter argued that § 210.140, RSMo Cum.Supp.1983 suspended the privilege or made it inapplicable in this case. In agreeing with the daughter and quashing the writ on its merits, the Court explained the procedural grounds for issuing the preliminary writ:

"It should be noted at the outset that prohibition lies in some instances to prevent judicial violation of statutory inhibitions, though in *State ex rel. Morasch v. Kimberlin*, 654 S.W.2d 889 (Mo. banc 1983), we held that violation of a statutory provision by a trial court does not always constitute an act in excess of its jurisdiction. The court's order in the instant case would allow discovery of materials privileged under § 491.060(5) RSMo Cum.Supp.1983. Since § 491.060(5) standing alone operates in part to restrict the power of a trial court in the discovery process, *see State ex rel. Mehle v. Harper*, 643 S.W.2d 643 (Mo.App.1982), it can be said that violation of the statute constitutes an act in excess of jurisdiction. *State ex rel. Collins v. Donelson*, 557 S.W.2d 707 (Mo. App.1977). *See State ex rel. Uregas Service Co., Inc., v. Adams*, 262 S.W.2d 9 (Mo. banc 1953)."

*State ex rel. D.M. v. Hoester*, 681 S.W.2d at 450 n. 3.

ring).[2] Apparently, this is the understanding of our intermediate appellate courts. For example, none of us have any apparent reservation in determining whether a trial court is acting in "excess of its jurisdiction" in discovery matters, when we believe the trial court is going to commit what we believe to be an egregious error or mistake of law. *See, e.g., State ex rel. Dover v. Lewis,* 666 S.W.2d 35 (Mo.App. 1984) (Western District); *State ex rel. Charterbank v. Donegan,* 658 S.W.2d 919 (Mo.App.1983) (Southern District); *State ex rel. Hamilton v. Dalton,* 652 S.W.2d 237 (Mo.App.1983) (Eastern District); *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325 (E.D.Mo.App.1985). Our reasons here to issue the preliminary writ and make it absolute are consistent with the foregoing principles and certainly no less compelling.

My reservation, however, stems from my belief that *Morasch* did not guide us out of our procedural morass. In short, the extraordinary writ of prohibition is being used as the procedural vehicle for an ordinary discretionary appeal of an interlocutory order. I have no quarrel with this use as such. I do not believe our State Constitution necessarily limits the use of the writ to the narrow grounds of jurisdiction over the subject matter or person, nor do I believe ideal appellate review precludes the writ from being used to process discretionary appeals of interlocutory orders. If the writ is to be so used, however, the propriety of this use should be stated explicitly and the grounds for that use should be specifically defined. If the writ should not be so used, the writ can still be maintained as an extraordinary procedural vehicle to question a trial court's jurisdiction over the subject matter or the person, and the grounds for a discretionary appeal of an interlocutory order can be defined by rule or statute. *See* Fed.R.App. P. 5; 28 U.S.C. § 1292(b) (1982).

In other circumstances, it may well be true that rules of law are best developed on a case by case basis or are best applied on an ad hoc basis. This is not the case with the extraordinary writ of prohibition. Presently, the practicing bar has difficulty in determining when a preliminary writ will lie, particularly since none of our appellate courts support their denial of a preliminary writ with written reasons. The competent and conscientious lawyer is penalized for being aware of the apparent lack of exact grounds for issuing the writ. Moreover, the practicing bar no longer appears to suffer in quiet desperation but seems to have fallen into cynical resignation. The bar appears to believe the issuance of the preliminary writ is not governed by any fixed objective rules but rather is governed subjectively by the whim and caprice of individual judges. The bar deserves better, and we can do better.

I have no reservation, however, in concurring with the majority opinion on the merits. I agree with its major premise, its consistent logic and its rational conclusion.

Out of a proper concern for the rights of an accused, we have developed a detailed process for accepting a guilty plea to assure the plea is made voluntarily and knowingly, and, as additional protection, particularly for those tried by jury, we have developed an easily understood process for post conviction remedies. To permit plaintiff here to turn these processes in on themselves, as he seeks to do, would ironically mock the system and greatly diminish the trust sensible people have in it.

---

**2.** To me, these grounds are separate and distinct but not mutually exclusive.