STATE of Missouri, ex rel., Jeffrey
IMBODEN, Relator,

v.

Honorable Kenneth ROMINES, Judge
of the Circuit Court of St. Louis
County, Division No. 10, Respondent.

No. 54898.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 30, 1988.

Application to Transfer Denied
Nov. 15, 1988.

Joseph M. Hadican, Mary E. Ott, Clayton, for relator.

Thomas J. Mehan, Asst. Pros. Atty., Clayton, for respondent.

SATZ, Judge.

Relator, Jeffrey Imboden, (Imboden) seeks our writ to prohibit the respondent judge from "enforcing sentences for contempt of court." The specific relief Imboden actually seeks is for us to order respondent to vacate the sentences for contempt. This relief is more appropriately obtained by mandamus than prohibition. The procedural distinction between mandamus and prohibition, however, "is at best blurred, at worst nonexistent, and the subject matter to which the two writs apply overlap ...." *St. Louis Little Rock Hospital, Inc. v. Gaertner,* 682 S.W.2d 146, 148 (Mo.App.1984). Thus, rather than prohibiting respondent from further action, we issued our preliminary writ in the form of a mandamus to vacate the sentences imposed. We now make our writ permanent.

In January 1986, Imboden was sentenced to five years imprisonment for the sale of a controlled substance. In February 1986, Imboden and a Kathy Sparks (Kathy) were indicted in a three count indictment. In Count I, Imboden was charged with conspiring with Kathy to murder Roger Sparks (Roger), Kathy's husband, and, in Count II, Imboden was charged with an attempt to steal money and property from Roger by coercion. In Count III, Kathy was charged with an attempt to murder Roger. Count III was severed from the indictment and apparently was then nolle prossed.

Subsequently, the state recharged Imboden with the conspiracy and the attempted stealing by filing an information in lieu of indictment. The state then nolle prossed the conspiracy charge, and the parties proceeded to trial on the attempted stealing charge.

At trial, Imboden waived his right to a jury trial, and according to a memorandum signed by him, his attorney and the prosecutor, the charge was to be tried by "[Imboden] submit[ting] the charge ... on the basis of:

1. tapes of conversations and transcripts of those conversations between Roger ... and ... Imboden, and ... Imboden and Kathy ...,
2. reports of the Creve Coeur Police
3. deposition [of Roger]"

These exhibits contain or refer to conversations in which Kathy "attempts to hire" or "hires" Imboden to kill Roger and Imboden "attempts to sell" or "sells" this information to Roger.

Imboden was convicted of the attempted stealing charge and was sentenced to five years imprisonment. This sentence was to be served concurrently with his previously noted five year sentence on the controlled substance charge.

In July 1987, the prosecutor again presented evidence to a grand jury for the purpose of re-indicting Kathy on the attempted murder charge. Imboden was called as a witness but refused to testify, invoking his privilege against self-incrimination guaranteed by the Fifth Amendment of the United States Constitution and Article 1, § 19 of the Missouri Constitution. The grand jury asked respondent for advice on how to proceed. In response to this request, respondent conducted appropriate hearings and then ordered Imboden to answer thirteen specific questions, the answers to which would require Imboden to testify to the facts related in the taped conversations and in the police reports. By agreeing to the submission of the attempted stealing charge on these tapes and reports, respondent found, Imboden had waived his privilege to the facts related in them.

Imboden continued to refuse to answer the thirteen questions, before the grand jury and before respondent. Respondent then found Imboden to be in contempt of court for his refusals to follow respondent's orders, and respondent sentenced Imboden to six months imprisonment on each refusal. These six month sentences were to be served concurrently with each other and consecutively with Imboden's sentence on the controlled substance charge.[1]

Subsequently, in August 1987, Imboden wrote a letter to the court expressing his discontent with the trial on the attempted stealing charge and vowing "to fight [the] decision until the Court corrects its error and I am acquitted of this bogus charge." The letter details many of the facts related in the taped conversations and police reports.

According to the parties, Kathy has now been re-indicted on the attempted murder charge, Imboden "has indicated his continuing intention to refuse to testify" and the trial judge assigned to that trial has "indicated his intention to order [Imboden] to testify as a witness [at trial]." These latter facts are not the basis on which Imboden seeks our writ, but they may be the precipitating cause for his applying for it at this time.

■ At the outset, we must determine whether Imboden is entitled to use an extraordinary writ as the procedural device to obtain the review he seeks. This determination turns on whether Imboden was held in civil or criminal contempt. Civil contempt is appealable, *e.g. City of Florissant v. Lee*, 714 S.W.2d 871, 873 [4] (Mo.App. 1986), and, thus, normally, is not reviewable by writ. *Lewis v. Murray*, 738 S.W.2d

953, 956 [1] (Mo.App.1987). Criminal contempt is not appealable and, thus, can be reviewed only by writ. *State ex rel. Girard v. Percich*, 557 S.W.2d 25, 36 [8] (Mo. App.1977).

■ Generally, the distinction between civil and criminal contempt is made by focusing on the penalty imposed for the contempt. For civil contempt, the penalty is remedial and for the benefit of the complainant; for criminal contempt, the penalty is punitive, to vindicate the authority of the court. *E.g. State ex rel. Shepherd v. Steeb*, 734 S.W.2d 610, 611 [1] (Mo.App. 1987). A penalty conditioned on the performance of an act is remedial and, thus, civil in nature because it can be remedied by the performance of the act. On the other hand, an unconditional penalty is criminal in nature because it is designed solely to punish. *Simmons v. Megerman*, 742 S.W.2d 202, 204 [2] (Mo.App.1987); *Mechanic v. Gruensfelder*, 461 S.W.2d 298, 304–5 [1, 2] (Mo.App.1970).[2]

Imboden's punishment is criminal in nature. Respondent did not make the sentences conditional. After the imposition of each sentence, respondent told Imboden:

If you should desire to answer this question prior to dismissal of the Grand Jury, I will review that commitment order.

This general reference to review does not make respondent's commitment orders coercive rather than punitive. The reference is a far cry from a commitment specifically conditioned on Imboden purging himself of contempt. Nowhere in the record does respondent inform Imboden he could avoid the commitment by answering the questions posed to him nor does he condition the length of the commitments on the term of the grand jury. *See* § 540.210 RSMo 1986.

1. The conviction and sentence on the attempted stealing charge was reversed by this Court. *State v. Imboden*, 753 S.W.2d 109 (Mo.App. 1988).

2. "It is true that either form of [punishment] has also an incidental effect. For if the case is civil and the punishment is purely remedial, there is also a vindication of the court's authority. On the other hand, if the proceeding is for criminal contempt and the [punishment] is solely punitive, to vindicate the au-

thority of the law, the complainant may also derive some incidental benefit from the fact that such punishment tends to prevent a repetition of the disobedience. But such indirect consequences will not change [punishment] which is merely coercive and remedial, into that which is solely punitive in character, or *vice versa.*"
*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 443, 31 S.Ct. 492, 498–9, 55 L.Ed. 797, 806 (1911).

Thus, Imboden's penalty was criminal in nature.

■ The usual procedural device used to review the validity of such a penalty, however, is a writ of habeas corpus, not mandamus nor prohibition. *See, e.g. State ex rel. Girard, supra* at 36 [8]. But, habeas corpus lies only when the petitioner is then being held in custody pursuant to the commitment order. Rule 91.01. Imboden is not yet being held on the sentences for contempt. Those sentences, as noted, are to be served after Imboden completes his pending five year sentence. Thus, the writ of habeas corpus is not proper here.

This, however, does not preclude Imboden from using other extraordinary writs to obtain the review he seeks. The use of the writs of mandamus and prohibition in our appellate courts is no longer narrowly limited, if their use ever was. *See e.g. State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862–63 [1] (Mo. banc 1986). *State ex rel. O'Blennis v. Adolf,* 691 S.W.2d 498, 500 [2] (Mo.App. 1985). *Compare State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983). These writs have even been used as the procedural device to process discretionary appeals of interlocutory orders. *See, e.g. State ex rel. O'Blennis, supra* at 499–500; *see also* cases collected and discussed in *State ex rel. O'Blennis* at 504–506 (Satz, J., concurring). This law determines the procedural propriety of Imboden's petition.

Imboden attacks the sentences on the ground that respondent had no authority to compel him to testify and, thus, had no authority to impose the sentences. On the record here, we see no reason to require Imboden to test the validity of these sentences only when he begins serving them. For example, we see no reason to require Imboden to calculate the precise moment he will begin serving these sentences, *See* § 558.041 RSMo 1986, and then, but only then, petition for a writ of habeas corpus. This Court has permitted the use of prohibition in fact situations similar to the present one. *See, e.g., State ex rel. Burrell–El v. Autrey,* 752 S.W.2d 895 (Mo.App.

1988). Thus, here, we permit the use of mandamus, prohibition's counterpart.

■ We now turn to the merits. Imboden contends his submission of the attempted stealing charge was not a testimonial waiver of his privilege against self-incrimination, and, therefore, he argues, he should not be compelled to testify before the grand jury. Imboden reads the memo submitting the charge as saying nothing more than the state's evidence will be the evidence contained in the material referred to in the memo—the taped conversations, the police reports and the deposition of Roger Sparks. Counsel for respondent contends the memo dispensed with the appearances of witnesses, and, by signing the memo, counsel for respondent argues, Imboden "accepted" the taped conversations and police reports as sworn testimony. Counsel for respondent characterizes this as a "judicial admission" of the facts contained in those tapes and reports and, then, equates the "judicial admission" with a knowing, intelligent and voluntary waiver by Imboden of his privilege.

We disagree with counsel's logic and conclusion. We need not detail our disagreement here, because we do not base our decision on this disagreement. We do note, however, that a testimonial waiver is not to be lightly inferred, *See Smith v. United States,* 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264, 1274 (1949), and "the courts accordingly indulge every reasonable presumption against finding a testimonial waiver ...." *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981) (citations omitted). This reluctance to find a · waiver stems from a basic reason for the existence of the privilege itself. We simply do not make any man put the noose around his own neck. *See, Griswold, The Fifth Amendment Today* 7 (1955). *See also,* 8 Wigmore, *Evidence,* § 2251. (McNaughton rev. 1961).

■ Even if we agreed with the assessment of counsel for respondent and found Imboden, by his actions, waived his privilege to those facts called for in the thirteen questions, respondent still would not prevail. Imboden's waiver of the privilege

**134**

during his trial is not binding on him in the grand jury hearing, because the grand jury is a separate, subsequent proceeding. "This principle is generally accepted as 'hornbook law,' and, with one exception, has been adopted by all federal courts which have considered it." *United States v. Fortin,* 685 F.2d 1297, 1299 (11th Cir. 1982); *In re Neff,* 206 F.2d 149, 152–153 (3rd Cir.1953).

The Fifth Amendment privilege against self-incrimination is binding on us, as a state court, through the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). Not only is that privilege binding on us, we must apply the privilege in a manner consistent with federal constitutional standards. *Id.*

In federal courts, as well as state courts, the waiver of the privilege against self-incrimination is *"limited to the particular proceeding* in which the witness volunteers the testimony or the accused takes the stand."* 8 Wigmore, *supra,* § 2276, at 470 (emphasis theirs); *See* 81 Am.Jur.2d Witnesses, § 65 (1976); *Annot.,* 36 A.L.R.2d 1403 (1954); *Annot.,* 42 A.L.R.Fed. 793 (1979); *McCormick on Evidence* §§ 132, 140 (3d ed. 1984). At least four different rationales have been used as support for this general rule.

First the testimonial waiver is an obvious erosion of a constitutionally guaranteed privilege; therefore, most courts find the waiver is never more extensive than necessary to prevent a distortion of the facts. *McCormick, supra,* §§ 132, 138–140. The testimonial waiver by a witness, for example, has less to do with his subjective intent to waive the privilege and more to do with the possibility that permitting him to select the stopping place of his testimony would enable him to distort the facts. *See, e.g. Klein v. Harris, supra* at 287.[3] Thus, it is said:

a witness cannot arbitrarily in part waive and in part reserve his privilege, for the

purpose of becoming a partisan in the case, revealing only so much of the truth as will benefit one of the parties, and asserting his privilege when interrogated as to facts which would cut the other way. *Georgia R.R. & Banking Co. v. Lybrend,* [99 Ga. 421], 27 S.E. 794, 800 (1896).

And for this reason:

There is ... no necessity or reason for extending this rule to cover a case where a witness voluntarily testifies as to privileged matters upon one trial, and subsequently, at a second and entirely different trial, claims his privilege of giving no testimony whatever in regard thereto. *Id.*

Without testimony by the witness in the second proceeding, there is no danger the facts will be distorted by him; therefore, there is no compelling reason to deny the witness his right to exercise his privilege. *See, Wigmore, supra* § 2276, at 470–472 and cases cited therein. This latter reasoning also applies to an accused.

Second, other courts are concerned that the scope of examination at a second proceeding will be uncertain and may be broader than the scope of the first examination. *United States v. Wilcox,* 450 F.2d 1131, 1141–42 [8] (5th Cir.1971), *cert. denied,* 405 U.S. 917, 92 S.Ct. 941, 30 L.Ed.2d 787 (1972); *United States v. Miranti,* 253 F.2d 135, 140 [7] (2d Cir.1958). *United States v. Steffen,* 103 F.Supp. 415, 417 [5] (N.D.Cal. 1951). Thus, there is danger a person would be forced to further incriminate himself in a proceeding at which he would not voluntarily have waived his privilege, by testifying to incriminating matters if he were a witness or by taking the stand if he were an accused.

Third, several courts have expressed concern that repetition alone will add to the weight and, in turn, to the incriminating character of the testimony; therefore, repetition should not be forced. *United States v. Miranti, supra* at 139–140; *Unit-*

---

**3.** *Klein* takes an extreme view and makes the need to avoid distortion a necessary prerequisite to finding a testimonial waiver by a witness. Most courts use the need to avoid distortion simply as a factor to be considered in determining whether a testimonial waiver has occurred. *McCormick, supra,* at 346.

*ed States v. Malone,* 111 F.Supp. 37, 39 (N.D.Cal.1953). *But see, Ellis v. United States,* 416 F.2d 791, 803 (D.C.Cir.1969).

Finally, some courts are concerned that "during the period between the successive proceedings conditions might have changed creating new grounds for apprehension (e.g. the passage of new criminal laws) ...." *United States v. Miranti, supra* at 140; *Poretto v. United States,* 196 F.2d 392, 394 (5th Cir.1952)

None of these rationales demonstrate completely compelling logic; nor can any one of them be applied to the present fact situation with complete rigor. However, because we are bound to accept and apply them, *Malloy v. Hogan, supra,* we choose the most appropriate one.

At the time Imboden was called to testify before the grand jury, he was still subject to the danger of incrimination on the conspiracy to commit murder charge, as well as other possible charges pointed out to respondent. Moreover, Imboden had not testified before the grand jury at the time he was called. No testimony given by him, therefore, could distort the facts before the grand jury. Consequently, he was entitled to invoke his privilege against self-incrimination. *See Ottomano v. United States,* 468 F.2d 269, 273 (1st Cir.1972), *cert. denied* 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260.[4] The state, obviously, can use his admissions as "admissions" where deemed appropriate and where the rules of evidence permit.

We make our writ permanent and order respondent to vacate the sentences for contempt in issue here.

SMITH, P.J., and STEPHAN, J., concur.

---

**4.** Without an express rationale, the court held a witness's testimony as a defendant in his own previous trial did not constitute a waiver of his privilege when he was called to testify at the trial of an alleged co-conspirator.